Laura **FERNANDEZ**, Plaintiff-Appellant,

v.

Richard S. **SCHWEIKER**, Secretary of Health and Human Services, Defendant-Appellee.

**No. 1260, Docket 81–6045.**

United States Court of Appeals, Second Circuit.

Argued April 16, 1981.

Decided May 5, 1981.

---

David Goldfarb, New York City (Stuart Miller, The Legal Aid Society, New York City, of counsel), for plaintiff-appellant.

John S. Martin, Jr., U. S. Atty., S. D. New York, New York City (Jane E. Booth, Michael H. Dolinger, Asst. U. S. Attys., New York City, of counsel), for defendant-appellee.

Before KAUFMAN and KEARSE, Circuit Judges, and WEINSTEIN, District Judge.*

WEINSTEIN, District Judge:

Claimant Laura Fernandez was awarded Supplemental Security Income disability benefits in November, 1975 on the ground of "Anxiety Hysteria." In June, 1978 she was informed that the Secretary no longer considered her eligible for benefits as of May, 1978, thus entitling her to benefits only through July, 1978.

A hearing before the administrative law judge was held in May of 1979 at which Fernandez appeared pro se, accompanied by her husband and with the assistance of a Spanish-speaking interpreter. The administrative law judge affirmed the Secretary's decision. Claimant appealed to the District Court which denied plaintiff relief. She now appeals from the order of the District Court.

 That order should be reversed and the case remanded to permit the taking of additional evidence. The administrative law judge improperly relied on the report of one of the examining psychiatrists without calling him to testify or informing the claimant of her right to do so and without making further inquiry respecting the claimant's testimony that the doctor had made an inadequate examination and was mistaken in factual and opinion matters.

* Of the Eastern District of New York, sitting by designation.

Claimant, now 34, was born in Puerto Rico and attended school through approximately the eighth grade. She was married in 1975 and has three children, 9, 5 and 3. Her only work experience is as a sewing machine operator from 1963 to 1965. In 1975, when she was found to be suffering from a disabling condition, medical reports from Marianne Makman, M. D. and William W. Pike, M. D. indicated that she was an "anxious, tearful, depressed woman" chiefly concerned with avoiding further pregnancy and reporting difficulties in controlling her children and her own feelings and impulses. She had attempted suicide. Dr. Makman diagnosed her at that time as a "Depressive Personality with severe anxiety attacks" and Dr. Pike concluded that she was suffering from "Anxiety hysteria, severe in a fragile, hysterical personality with suicidal ideation and obsessive fears."

At the administrative hearing in 1978 claimant was found no longer to be under a disabling condition preventing her from engaging in substantial gainful employment. The administrative law judge had before him the reports of a social worker, an internist and three examining psychiatrists which plausibly could have been interpreted as supporting disability, but might arguably have been construed as some evidence to the contrary.

Among the psychiatric reports was one indicating lack of a disabling condition. Dr. Jose M. Herrera reported, among other things, claimant took "complete care of her apartment, doing the cooking, ironing and washing for her family," and that she "goes shopping, watches television, reads the newspapers and enjoys listening to the radio." He diagnosed her as presenting an "Inadequate Personality" and reported that she had come to the interview using public transportation and unaccompanied. He also stated that "[h]er relatedness to other [sic] is poor, patient being very defensive and guarded against any threat to her present status" and that "[h]er tolerance to stress is diminished, patient being prone to explosive and hystrionic [sic] behavior." (Record 105).

The administrative law judge's conclusion relies heavily on Dr. Herrera's report:

The Administrative Law Judge concludes that based on the evidence and testimony that the claimant does not have a severe impairment. She is able to take care of her household, do her shopping and use public transportation. She enjoys reading, watching television and listening to the radio. These are not the symptoms of a severely mentally disturbed individual (Record 18).

Claimant argues that such reliance, in the absence of live testimony and cross-examination, was improper because of doubts raised during the hearing regarding the report's probative value. She argues that the administrative law judge, on the basis of information provided him at the hearing concerning possible irregularities in Dr. Herrera's examination, should have called him to give live testimony at the hearing or should have excluded his report from consideration.

The claimant raised the following objections to Dr. Herrera before the administrative law judge (Record 28–30):

—that his office was actually an animal hospital.

—that Dr. Herrera had made only the most cursory of examinations.

—that claimant's husband had accompanied plaintiff to the Herrera interview and had in fact driven her there in a car borrowed from a friend, contrary to Dr. Herrera's statement in his report that she arrived unaccompanied via public transportation.

The district judge apparently obtained the results of an investigation indicating that Dr. Herrera was not acting improperly (Record 127 n.*). This is an inquiry that the administrative law judge should have undertaken, subject to challenge and confrontation by the claimant.

The reports of the other two psychiatrists from 1978, which were also before the administrative law judge, were based on substantial contact with claimant. They differ substantially in tone from Dr. Herrera's.

Dr. Marianne Makman described the claimant as experiencing great difficulty in mastering regular care of her house and children, as finding life "chronically over-whelming and bewildering," as easily losing control, and as "occasionally requir[ing] a homemaker." This report also noted that claimant has responded "reasonably well" to support staff help and to Valium (Record 107).

Dr. Hugo M. Morales indicated that the claimant was able to cook and keep the house clean; she was capable of using public transportation although she preferred to be accompanied; she depended a great deal on her husband and was always "worried at home." He also reported that she said during their interview that she felt like killing her son Daniel at times. "Patient appeared to be extremely depressed, somewhat caught in between her duties as a mother and her inadequacy and desire to go out and never come back." He described her prognosis as guarded, and diagnosed her as suffering "Depressive Disorders" (Record 100).

■ A hearing examiner is entitled, under normal circumstances, to rely on the written medical reports of experts who have examined a claimant; he is not required to call reporting physicians to testify where the claimant has failed to exercise her right to subpoena them under 20 CFR 404.926. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971).

■ In this circuit in a disability benefits case involving a pro se claimant—especially one "handicapped by . . . ill health, and inability to speak English well," *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)—a "'duty devolves on the hearing examiner to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts surrounding the alleged right or privilege.'" *Gold, supra* at 43 (*quoting Hennig v. Gardner*, 276 F.Supp. 622, 624–625 (N.D. Tex.1967)); *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980).

While it is true in theory that the claimant could have subpoenaed Dr. Herrera, it could hardly be expected that she could in reality do so since her ability to cope with the most basic of life's responsibilities—home, children and work—was, and remains, open to serious doubt. This circuit has recognized that in cases of this type claimants' right to subpoena and cross-examine experts submitting reports adverse to their claims is important, particularly when there is "substantial reliance" on the report by the hearing examiner. *Gullo v. Califano*, 609 F.2d 649, 650 (2d Cir. 1979). That right could only have been made meaningful here had the administrative law judge treated the claimant's repeated complaints as a request that Dr. Herrera be called to testify. At the least he should have alerted claimant and her husband to their power to subpoena the doctor.

The court noted in *Gold* that where a claimant is unrepresented and plainly unequal to the task of developing her own record, the failure of the administrative judge to "call witnesses or to indicate that she ought to do so" can result in less than a fair hearing. *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 43–44 (2d Cir. 1972). The long acknowledged beneficent purposes of the Act, *see, e. g., Gold, supra* at 43; *Haberman v. Finch*, 418 F.2d 664, 667 (2d Cir. 1969), were not served by the hearing examiner in this case.

As this court recently pointed out in *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980), the administrative judge has a duty to "adequately protect the rights of [a] pro se litigant by ensuring that all of the relevant facts were sufficiently developed and considered." The serious questions raised relating to the quality and trustworthiness of Dr. Herrera's report were "sufficiently controversial to merit cross-examination." *McLaughlin v. Secretary of Health, Education and Welfare*, 612 F.2d 701, 704 n.4 (2d Cir. 1980) (remanding disability benefits case in which administrative law judge had called a "medical adviser" to testify but had impermissibly limited cross-examination to exclude interrogation on the subject of a "highly relevant" medical procedure).

The "underlying reliability and probative value" of written medical reports which led the Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971), to conclude that an administrative law judge might rely on them in the absence of live testimony was here seriously called into question by the claimant's protests and complaints, and in light of the discrepancies between statements made by the claimant's husband and those made by Dr. Herrera concerning Mrs. Fernandez' arrival at the "clinic." Failure adequately to investigate the reliability of Dr. Herrera's report was compounded by the lack of inquiry on other matters at the hearing. Altogether, the examination of the claimant herself on the subject of her subjective symptoms by the administrative judge covers little more than a page (Record 40–42). In *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980), the Second Circuit noted that the record was "replete with instances where the administrative judge should have questioned plaintiff more fully concerning various aspects of his testimony" and in particular stressed that the administrative law judge "never questioned plaintiff about his subjective symptoms." *Hankerson* at 895–96. The court noted that such testimony was critical since it could serve as " 'the basis for establishing disability' " and since it was important in allowing the administrative law judge to effectively exercise his "discretion to evaluate the credibility of ... [the] claimant ... [in order to] arrive at an independent judgment." *Hankerson* at 895–96 (*quoting Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).

At argument it was suggested that new evidence of claimant's further more recent mental deterioration might be presented in a new claim. But this continuing right does not negate claimant's right to have her original claim properly adjudicated.

At the original hearing, claimant was not represented. She was not advised by the administrative law judge of her right to subpoena the psychiatrist, the factual accuracy of whose report she and her husband challenged. This report was heavily relied on by the administrative law judge. Claim-ant was only perfunctorily questioned by the administrative law judge as to her ailments. Although the record contains sufficient evidence to support the conclusions of the administrative law judge, the procedural circumstances justify a remand. *See Cutler v. Weinberger*, 516 F.2d 1282 (2d Cir. 1975).

The order of the District Court affirming the decision of the administrative law judge is reversed and the case is remanded to the Secretary for the taking of additional evidence, with claimant represented by counsel.