Dalila **RODRIGUEZ**, Plaintiff,

v.

Richard S. **SCHWEIKER**, Secretary of Health and Human Services, Defendant.

No. 79 Civ. 431 (CHT).

United States District Court, S. D. New York.

July 28, 1981.

Bronx Legal Services Corp., Bronx, N. Y., for plaintiff; Gladys Carrion DeLeon, Michael D. Hampden, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; Barbara L. Schulman, Asst. U. S. Atty., Frank V. Smith, III, Regional Atty., Office of Gen. Counsel, Dept. of Health and Human Services, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Plaintiff Dalila Rodriguez seeks review of a final decision by the Secretary of Health and Human Services ("Secretary") denying her applications for disability insurance benefits and Supplemental Security Income ("SSI") based on disability. 42 U.S.C. §§ 405(g), 1383(c)(3). The denial of disability insurance benefits is affirmed on the ground that plaintiff has not established that she was disabled during the time that she met the insured status requirements. *Id.* § 423(a).[1] The SSI claim is remanded to the Secretary for a redetermination in light of new and material evidence that was not available at the time the hearing was held before the Administrative Law Judge. *Id.* § 405(g).[2]

---

1. To be insured for disability benefits in a given month, the applicant must meet certain earning requirements for twenty of the forty quarters ending with the quarter in which that month fell. *See Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981); *Parker v. Harris*, 626 F.2d 225, 228 n.3 (2d Cir. 1980).

2. To be eligible for SSI disability payments, an applicant must demonstrate that "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B). This standard is identical to the one used in disability insurance cases under 42 U.S.C. § 423 and so cases under each provision are cited interchangeably. *Hankerson v. Harris*, 636 F.2d 893, 895 n.2 (2d Cir. 1980); *Rivera v. Harris*, 623 F.2d 212, 216 n.4 (2d Cir. 1980).

### Background and Prior Proceedings

Ms. Rodriguez, a forty-three year old woman, filed applications for disability insurance benefits and SSI on June 3, 1976.[3] She stated that she suffered from "persistent severe chest pains" which were caused by stab wounds received in 1968 when she was stabbed several times above the heart and on her left side. Tr. at 41, 62.[4] She was hospitalized after the stabbing and told that she had fluid in her chest. Id. at 42. Although she continued to feel ill, she returned to work after she was released from the hospital. Id. Ms. Rodriguez last held a job in 1975 when she worked as a floor guard in a discount store. She was fired after approximately three weeks because she became too ill to work. Id. at 39. When she applied for disability benefits, Ms. Rodriguez stated that she had been unable to work since December 1975 and that a doctor had told her to stop working. Id. at 59, 62.

After her applications for benefits were denied, Ms. Rodriguez requested a hearing on the matter. A hearing was held before an Administrative Law Judge in September 1977. At that time, Ms. Rodriguez was undergoing treatment at the Mount Sinai Hospital outpatient cardiac clinic. She was receiving treatment biweekly and was told to come to the emergency room if she felt very sick. Id. at 33–34. She was taking sorbitrate,[5] nitroglycerine, and Tylenol for pain. Id. at 37. She had previously been taking inderal,[6] which she stated was for her "heart," and medication for arthritis, but the doctor at the clinic terminated her use of these drugs. Id. Ms. Rodriguez had been going to the clinic for about a month, id. at 33, following an examination at Mount Sinai hospital. Records from the hospital, dated August 16, 1977 through October 13, 1977, indicated possible cardiac ischemia that was treated with isordil.[7] Id. at 96–102. The final entry indicated that Ms. Rodriguez missed an appointment at the clinic where she had been referred for further consultation. Id. at 102.

About one year earlier, in August 1976, Ms. Rodriguez had been examined by an internist at Diagnostic Health Services, Inc. She was then suffering from chest pain, pain and numbness in her left arm, and shortness of breath. Id. at 78. The internist's report lists his "Impressions" as follows: post-stab wounds; pterygium (a thickening of the conjunctiva) in the right eye; respiratory insufficiency; and bursitis in the left shoulder. Id. at 79. A chest x-ray revealed that her lungs were clear and there was no evidence of "cardiac enlargement." Id. at 78. Her muscular skeletal system was normal except for mildly limited rotation of the left shoulder. Id.

One other medical report submitted at the hearing concerned Ms. Rodriguez's chest pains. In September 1970, she was treated at Metropolitan Hospital for complaints of chest pain on the left side which radiated to the neck.

The other medical records reviewed by the Administrative Law Judge primarily covered other types of emergency room visits (accidents, cold with fever) and gyneco-

---

**3.** With one minor caveat, plaintiff adopts the statement of facts presented by the Secretary in his memorandum. Plaintiff's Memorandum at 5. Although the Secretary describes Ms. Rodriguez as a forty-one year old woman, the record reveals that she was born on April 25, 1938 and is therefore now forty-three years old.

**4.** "Tr." refers to the administrative transcript of the entire record of proceedings relating to Ms. Rodriguez's applications for disability insurance benefits and SSI. The transcript includes the applications, medical records, employment records, testimony, correspondence, and decisions rendered by the Administrative Law Judge and the Appeals Council. The tran-

script was served and filed with the Secretary's answer to plaintiff's complaint.

**5.** Sorbitrate is used in the treatment of angina pectoris, a severe constricting pain in the chest which may radiate to the left shoulder and down the arm. Angina pectoris can result from ischemia of the heart muscle, usually caused by coronary disease.

**6.** Inderal is used in the treatment of angina pectoris.

**7.** Cardiac ischemia is a condition in which the blood supply to the heart is mechanically obstructed, usually by arterial narrowing.

logical problems. In February 1977, Ms. Rodriguez spent seventeen days in Arthur C. Logan Memorial Hospital undergoing gynecological tests and procedures (including a fractional D & C) for treatment of a cyst in her right ovary. *Id.* at 83–90. She was discharged in satisfactory condition, was told to see her doctor in two weeks, and was permitted to engage in moderate physical activity. *Id.* at 85.

Ms. Rodriguez, who was not represented by counsel, was the only person to testify at the half-hour hearing. Although she speaks and understands English, an interpreter was requested and supplied because, in her words, "sometimes my English is not so good that I could defend myself. There are some words, and I cannot explain myself in English what the word mean." *Id.* at 31. In response to a question posed by the Administrative Law Judge, Ms. Rodriguez stated that she lived in a second floor walk-up apartment and had taken the subway from the Bronx to the hearing. *Id.* at 38.

Ms. Rodriguez explained that she had lost her last job in 1975 when she became too ill to work. At that time, she experienced severe chest pains, numbness in her limbs, and throbbing in her eyes. *Id.* at 40. She was hospitalized for about a week, *id.* at 41, and frequently suffered from pain after that incident. The left side of her neck swells and she has to lie down because she feels so sick. *Id.* She finds walking difficult, tires easily, and needs help with the housework. Ms. Rodriguez testified that she spent most of her time at home, where she lived with her son and daughter, and did small household chores. She is divorced and, at the time of the hearing, her welfare payments had just been terminated. *Id.* at 43.

Ms. Rodriguez applied for a few jobs after losing the floor guard position but received no offers and, furthermore, was unable to go to work. *Id.* She stated on her Medical History and Disability Report that her doctor told her to stop working after she became ill in 1975. *Id.* at 62. Her prior employment history is rather sketchy but it appears that she worked on the assembly line at a Westinghouse plant in Puerto Rico, was once employed as a crossing guard, and has made handbags in plastic manufacturing factories. *Id.* at 39, 42, 64.

About two months after the hearing, the Administrative Law Judge issued his decision denying benefits to Ms. Rodriguez. On the basis of her official Earnings Record, *id.* at 60, he concluded that her "last met" date for disability insurance benefits was June 30, 1973 because she did not satisfy the special earnings requirements after that time. *Id.* at 25. Since she was employed after this date and was able to work until December 1975, she did not qualify for disability insurance benefits under the Social Security Act.

After reviewing Ms. Rodriguez's testimony and documentary evidence, the Judge asserted that the record "does not evidence any impairment or combination of impairments so severe as to preclude any kind of substantial gainful employment for a continuous period of a year or more." *Id.* at 25. This conclusion was based on "the lack of any record of sustained complaints or treatment for any severe condition," and on "such indicia of physical fitness for functioning as her hospital discharge summary on February 18, 1977, which states that even then, but two weeks or so after an operation, it was felt that she could engage in moderate physical activity, and [on] her testimony in which she stated that after her last employment in 1975 she filled out several applications for employment." *Id.* With respect to Ms. Rodriguez's vocational capabilities, the Judge noted that she had "work experience as an assembler" and took "administrative notice of the existence [of] substantial numbers of assembly jobs, including sedentary ones, in the Metropolitan New York area." *Id.* at 26. He therefore concluded that Ms. Rodriguez's application for SSI disability benefits must also be denied. *Id.*

The Administrative Law Judge's ruling became the final decision of the Secretary when it was approved by the Appeals Council in February 1978. In connection with

her appeal, Ms. Rodriguez submitted additional medical reports to the Council which were incorporated into the record. *Id.* at 16–18, 127–28. These records indicated that Ms. Rodriguez was admitted to the Cardiac Intensive Care Unit of Flower and Fifth Avenue Hospitals (New York Medical College) on November 23, 1977 with a condition diagnosed as pulmonary embolism.[8] *Id.* at 127. A physician's report dated December 12, 1977 stated that Ms. Rodriguez was being treated with anti-coagulants for pulmonary emboli and "it is inadvisable for her to return to work at this time." *Id.* at 128. In affirming the Administrative Law Judge's decision, the Appeals Council concluded that this additional evidence "does not indicate that this new impairment can be expected to incapacitate you for a continuous period of twelve months." *Id.* at 16.

Represented by counsel, Ms. Rodriguez requested a reopening of the Appeals Council determination in light of further medical evidence concerning her physical condition. By letter dated December 11, 1978, her request for reopening was denied. *Id.* at 4. The letter indicated that the following additional evidence had been reviewed to determine whether reopening was warranted: medical records covering Ms. Rodriguez's 1977 hospitalization for pulmonary embolism; April 1978 reports on diagnostic tests that were conducted because of another episode of chest pain; and September 1978 medical records indicating that she was admitted to Metropolitan Hospital for four days complaining of severe chest pains. *Id.* A progress record dated September 21, 1978 stated that: "Patient develop [sic] chest pains on exertion and walking a few blocks, accompanied by shortness of breath and [illegible]." The record noted that she had been hospitalized in November 1977 "because of pulmonary emboli" and had "a recurrent emboli two months ago." The reporting physician then asserted that "at this time she is unemployable." Plaintiff's Complaint, Exh. 6.

Upon denying her request for reopening, the Appeals Council granted Ms. Rodriguez an extension of time in which to commence a civil action challenging the Secretary's final determination. Tr. at 4. This suit followed. More than two years after the complaint and answer were filed, the Secretary moved for judgment on the pleadings and plaintiff cross-moved for summary judgment or, in the alternative, for an order remanding the case to the Secretary so that additional evidence may be taken. In connection with this motion, plaintiff has submitted a physician's report dated June 12, 1980 which reviews her prior medical history and describes her present physical condition. The report includes numerous technical terms that the Court will not attempt to interpret. The physician concludes, however, that: "Patient at times will be free of symptoms, but only to recur during stress situations at home or at work. She is permanently incapacitated, and in need of follow-up and medical treatment."

*The Standard of Review*

◼ The claimant bears the burden of proving a disability that entitles him to insurance benefits or SSI. *Decker v. Harris,* 647 F.2d 291, 293 (2d Cir. 1980). And it hardly needs repeating that a reviewing court is not authorized to determine de novo whether the claimant is disabled. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980). Judicial review of the administrative decision is limited to determining whether the Secretary's conclusions and findings of fact are supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir. 1980). Substantial evidence has been defined to mean "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parker v. Harris, supra,* 626 F.2d at 231–32, *quoting Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) *and Consolidated Edison Co. v. NLRB,* 305 U.S.

---

**8.** Pulmonary embolism is a condition in which the pulmonary arteries are obstructed.

197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).[9]

In reviewing the Secretary's decision, a court must also "be satisfied that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.'" *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980), *quoting Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 43 (2d Cir. 1972). "[I]n a disability benefits case involving a pro se claimant—especially one 'handicapped by . . . ill health, and inability to speak English well'—a 'duty devolves on the hearing examiner to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts surrounding the alleged right or privilege.'" *Fernandez v. Schweiker*, 650 F.2d 5, 8 (2d Cir. 1981), *quoting Gold v. Secretary of Health, Education and Welfare, supra*, 463 F.2d at 43. Failure to perform this duty may leave numerous "gaps in th[e] administrative record" which demonstrate that the claimant "did not have a fair and adequate hearing before the Secretary." *Hankerson v. Harris, supra*, 636 F.2d at 897.

*The Hearing*

■ The decision reached by the Administrative Law Judge, after considering the documents and testimony presented at the hearing in this case, is supported by substantial evidence. With respect to the denial of disability insurance benefits, the evidence supports the conclusion that Ms. Rodriguez ceased to meet the special earnings requirements at least one year, and probably longer, before the time that she was disabled within the meaning of the Social Security Act. See notes 1 and 2 *supra*. Ms. Rodriguez does not appear to challenge this determination. With respect to the denial of SSI, the Court agrees that the documentary evidence submitted did not indicate that Ms. Rodriguez was suffering from an impairment that would preclude employment for a period of a year or more. The

Court disagrees, however, with the Administrative Law Judge's view that this conclusion was buttressed by Ms. Rodriguez's good physical condition two weeks after her gynecological operation in February 1977 and by her meager attempt to obtain new employment after she was fired from her floor guard job.

■ Although the record contains sufficient evidence to support the Judge's determination, too many issues were left unexplored. As demonstrated by numerous Second Circuit decisions, an incomplete record may warrant a remand for further development of the evidence. *See, e. g., Fernandez v. Schweiker, supra*, at 9; *Hankerson v. Harris, supra*, 636 F.2d at 897; *Eiden v. Secretary of Health, Education and Welfare*, 616 F.2d 63, 65 (2d Cir. 1980); *Cutler v. Weinberger*, 516 F.2d 1282, 1287 (2d Cir. 1975). One of these recent cases is strikingly similar to the case at bar in several important respects. In *Hankerson v. Harris, supra*, 636 F.2d at 895–96, the Second Circuit criticized a disability claim hearing in the following manner:

The record is replete with instances where the ALJ [Administrative Law Judge] should have questioned plaintiff more fully concerning various aspects of his testimony. Despite passing references by plaintiff to "heart pains" and "shortness of breath" the ALJ never questioned plaintiff about his subjective symptoms. This circuit has repeatedly held that a claimant's testimony concerning his pain and suffering is not only probative on the issue of disability, but "may serve as the basis for establishing disability, even when such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence . . . ." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *see also McLaughlin v. Secretary of HEW*, 612 F.2d 701, 704–05 (2d Cir. 1980). In the instant case, where the

---

**9.** Several factors should be considered in assessing disability: (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or

other; and (4) the claimant's educational background, age, and work experience. *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978).

medical record before the ALJ contained a number of references to plaintiff's subjective symptoms, it was particularly important that the ALJ explore these symptoms with plaintiff so that the ALJ could effectively exercise his "discretion to evaluate the credibility of ... [the] claimant ... [in order to] arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, supra, 615 F.2d at 27.

The ALJ also erred in failing to advise plaintiff that he should obtain a more detailed statement from his treating physician. It is settled law in this circuit that in the absence of substantial contradictory evidence, the opinion of the claimant's treating physician is binding on the Secretary.

\* \* \* \*

The ALJ also did not question plaintiff about the illness which forced him to leave his job as a security guard after only six to eight weeks. The ALJ should have done so, in light of his conclusion that plaintiff retains the functional capacity to work as a guard. Given the undisputed medical evidence that plaintiff cannot walk more than four blocks or climb a flight of stairs without experiencing extreme shortness of breath, it is entirely possible that plaintiff "took sick" as a direct result of the requirements of the job. Such evidence would certainly cast serious doubts on the ALJ's conclusion that plaintiff retains the functional capacity to work as a guard.

After noting some other omissions and mischaracterizations, the Second Circuit stated:

While none of these errors standing alone might be sufficient to set aside the Secretary's determination, their combination persuades us that plaintiff did not

have a fair and adequate hearing before the Secretary.... Now that plaintiff has been provided by this court with competent counsel, who we assume will continue to represent him, it is likely that many of the important ambiguities discussed above can be cleared up through additional proceedings before the Secretary.

*Id.* at 897.

Like *Hankerson*, the plaintiff in the case at bar appeared at the administrative hearing pro se and was the only witness to testify. Both hearings were quite brief. Indeed, the *Hankerson* court emphasized that the hearing transcript consumed *only* sixteen pages; the instant transcript is merely fourteen pages long. This record is also "replete with instances where the Administrative Law Judge should have questioned plaintiff more fully." *Id.* at 895. For example, the examination of Ms. Rodriguez about her subjective symptoms covers only a few lines. Tr. at 40–41; *see Fernandez v. Schweiker, supra.* In light of her halting English and rather vague or incomplete descriptions, it was incumbent on the Judge to delve more deeply into these matters and elicit more comprehensive testimony regarding Ms. Rodriguez's pain and suffering. The inquiry into Ms. Rodriguez's employment experiences was also cursory. The Judge concluded that Ms. Rodriguez could obtain an "assembly job" because she had experience as an "assembler" and there were many such jobs, including sedentary ones, in the New York area. Tr. at 26. Yet he never explored whether she could perform such a job (which she last held in 1974, *id.* at 39–40) after her symptoms worsened in 1975 and her testimony that she must be "lying down face-up all the time because [she] feel[s] sick, very, very sick," *id.* at 41, belies such an assumption.[10] As in *Hanker-*

---

**10.** Apparently, the Administrative Law Judge decided that Ms. Rodriguez had made a prima facie showing of physical impairment sufficiently severe to preclude her return to work as a floor guard. Assuming that she made this initial showing, "the burden shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful

work which exists in the national economy and which the claimant could perform, considering not only his physical capability, but as well his age, his education, his experience and his training." *Parker v. Harris, supra,* 626 F.2d at 231. To carry this burden, the Secretary must demonstrate that the claimant can engage in other activity required for other jobs and that these

*son,* the claimant was not adequately questioned about the illness which cost her the job as a guard. Ms. Rodriguez was given a job as a floor guard because she "wasn't able to do much," *id.* at 39, and then lost it because she became too ill to work. *Id.* Since this episode casts doubt on her ability to perform even an undemanding job, it should have prompted further questioning. Finally, like Hankerson, Ms. Rodriguez should have been advised to obtain a more detailed medical report from the physician who was currently treating her.

The Court need not decide whether these "gaps in the administrative record" are sufficiently wide to warrant a remand of this case because, as discussed below, a remand is clearly compelled by the additional evidence presented to the Appeals Council in connection with plaintiff's request to reopen her claim. It should be noted, however, that even absent this additional evidence, a remand would probably have been deemed appropriate in this case.

*New Evidence Before the Appeals Council*

The remand provision of the Social Security Act, 42 U.S.C. § 405(g), was amended about a year ago, P.L. 96–265 § 307, 94 Stat. 458 (June 9, 1980), and this amendment "was at least in part designed to limit federal court remands to the Secretary." *Aubeuf v. Schweiker,* 649 F.2d 107, 115 (2d Cir. 1981). As amended, the provision authorizes a court to order additional evidence to be taken before the Secretary, "but only upon a showing that there is new evidence which is material and there is good cause

for the failure to incorporate such evidence into the record in a prior proceeding."

After her hearing before the Administrative Law Judge, Ms. Rodriguez submitted new evidence to the Secretary on two separate occasions. First, on appeal, she submitted medical reports concerning her hospitalization for pulmonary embolism at the end of 1977. Second, in seeking to reopen her case, Ms. Rodriguez submitted diagnostic test reports from April 1978 and medical reports on her hospitalization in September 1978 which indicated that she was "unemployable." See discussion *supra.*

While the reports submitted on appeal became part of the record in this case, the Court does not consider the evidence presented in connection with the reopening request to be part of the official record on review. The 1978 reports were not included in the transcript filed with the Secretary's answer which was described as constituting "a full and accurate transcript of the entire record of proceedings relating to the application of Dalila Rodriguez." Tr. Certification.[11] The transcript did include a copy of the letter informing Ms. Rodriguez that the Appeals Council would not reopen her case. This letter, however, merely gave a brief description of the additional evidence submitted and made no reference to the September 21, 1978 report stating that Ms. Rodriguez was unemployable.[12] In contrast, the additional evidence presented on direct appeal is included in its entirety in the official transcript.

jobs are available for a person with the claimant's capabilities and skills. *Decker v. Harris, supra,* 647 F.2d at 294; *Vega v. Harris,* 636 F.2d 900, 903–04 (2d Cir. 1980); 20 C.F.R. Subpart P §§ 404.1501–39 and Apps. 1 and 2 (1980). Although the Regulations governing this inquiry were promulgated after the Administrative Law Judge's decision, they do apply to a civil suit seeking review of that determination. *Decker v. Harris, supra,* 647 F.2d at 294 n.2. In this case, it does not appear that the Secretary met the applicable evidentiary standard.

11. The Social Security Act provides that: "As part of his answer the Secretary shall file a certified copy of the transcript of the record

including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g). The 1978 Reports were annexed as exhibits to plaintiff's complaint.

12. It is unclear precisely which records were submitted to the Appeals Council in support of the request to reopen. Some of these documents, therefore, may have been presented for the first time in connection with plaintiff's summary judgment motion. This evidence is certainly new and material and there is good cause for the failure to incorporate it into the prior proceeding which was terminated before these reports were prepared.

In reviewing the Secretary's denial of benefits, the Court is limited to the Secretary's "final decision"—the post-hearing determination which was affirmed by the Appeals Council. 42 U.S.C. § 405(g). The Secretary's decision not to reopen a claim for benefits is not subject to judicial review. *Califano v. Sanders*, 430 U.S. 99, 107–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977). Since that decision cannot be reviewed, the evidence presented in connection with the request to reopen is not incorporated into the record on review. The Court, therefore, may consider this evidence as new information which was not incorporated into the record of the prior proceeding for good cause, namely, because it concerns Ms. Rodriguez's physical condition *after* the "final decision" was rendered. *See Parks v. Harris*, 614 F.2d 83 (5th Cir. 1980) (medical evidence outside the administrative record cannot constitute grounds for reversing Secretary's denial of benefits; but where evidence is relevant and probative, case should be remanded to Secretary for reconsideration in light of new medical reports); *Scott v. Califano*, 462 F.Supp. 240 (N.D.Ill. 1978) (remand ordered where administrative record on disability claim was compiled while plaintiff was appearing pro se and newly acquired evidence was obtained after the hearing through the efforts of counsel).

The 1978 medical reports submitted by Ms. Rodriguez in connection with her request to reopen her case are clearly material to her disability claim. These reports concern the chest pain that she alleges precludes her from working and make reference to her earlier hospitalization for pulmonary embolism. Moreover, the report dated September 21, 1978 asserts that Ms. Rodriguez is unemployable—the critical fact sought to be determined in these proceedings. Finally, when considered in conjunction with the December 12, 1977 physician's report stating that "it is inadvisable for her to return to work at this time," Tr. at 128, this new evidence casts doubt on the Secretary's February 15, 1978 determination that Ms. Rodriguez has "not been prevented from engaging in [her] usual sedentary work for any continuous period of twelve months." *Id.* at 16. (Appeals Council affirmance of decision denying benefits).

In addition to these 1977–78 records, Ms. Rodriguez has submitted to the Court a June 1980 physician's report which is based on a physical examination, review of previous records, and electrocardiographic tracings. The physician concluded that Ms. Rodriguez needs further medical treatment and is permanently incapacitated. He noted that although her "symptoms" may subside at times, they will recur during stressful home or work situations. At this juncture, it is not the Court's role to ascertain precisely how this report should bear on the Secretary's determination. But this more recent medical evidence should clearly be considered before the Secretary renders a final decision on Ms. Rodriguez's case.

*Conclusion*

Ms. Rodriguez's SSI claim is remanded to the Secretary for further evidentiary hearings in accordance with this Opinion. The Court assumes that Ms. Rodriguez will continue to be represented by counsel. Although "lack of counsel, without more, will not establish 'good cause' for a failure to introduce evidence within the meaning of [the remand provision]," counsel's assistance will help to assure that all material evidence will now be submitted. *Carter v. Schweiker*, 649 F.2d 937, 943 n.9 (2nd Cir. 1981).

The Secretary's decision to deny Ms. Rodriguez disability insurance benefits is affirmed.

So ordered.