**Rafael SANTIAGO, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of the Department of Health and Human Services, Defendant.**

**No. 80 Civ. 5716–CSH.**

United States District Court,
S. D. New York.

Sept. 21, 1982.

David Goldfarb, The Legal Aid Society, New York City, for plaintiff; Bonnie J. Butler, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., New York City, for defendant; Leona Sharpe, Asst. U. S. Atty., New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is an action under Sections 1631(c)(3) and 205(g) of the Social Security Act, as amended, 42 U.S.C. §§ 1383(c)(3) and 405(g), to review the decision of the Secretary of Health and Human Services ("the Secretary") denying claimant, Rafael Santiago, Supplemental Security Income for dis-

ability. Both parties have moved pursuant to Rule 12(c), F.R.Civ.P., for summary judgment on the pleadings. For the reasons set forth below, the case is remanded to the Secretary for proceedings consistent with this opinion.

## I.

### A. *Factual Background*

Claimant Rafael Santiago was born in 1919 in Puerto Rico, where he attended four years of school. He does not speak English. Santiago held several jobs as a house and building painter before coming to New York in about 1967. At that time, he became employed by the Sherman Pressure Castings Corporation, where his work consisted of welding metal pieces to make parts for guns and bombs. (Tr. 50).[1] Claimant has not been employed since he stopped working for Sherman in 1972 or 1973. (Tr. 26, 49).

From September to November of 1974, claimant was hospitalized for gastrointestinal pain and bleeding diagnosed as gastric ulcer. (Tr. 64–69). As a result of his ulcer, Santiago was hospitalized again in July and August of 1977, when he underwent an operation in which a portion of his stomach was removed. (Tr. 78).

Early in 1977, claimant came under the care of Dr. N.M. Tejaratchi, who saw claimant "once or twice a month," throughout the period in question, to administer treatment for ulcer, arthritis and inguinal hernia. (Tr. 84). The record contains two sets of medical reports completed by Dr. Tejaratchi in June and September of 1979. (Tr. 78–81, 84–87). These reports list Santiago's symptoms as chronic gastric pain and bleeding, chronic joint pain ("arthralgia"), low back pain and limitation of spine motion, and tremor of the hands. (Tr. 78, 84). Dr. Tejaratchi found claimant unable to perform any grasping, pushing, pulling, or fine manipulations of the hands, and able to sit or stand for a maximum of two hours. (Tr. 79, 80, 87). He reported in addition that Santiago suffered from "anxiety neurosis" and recommended that he undergo a psychiatric examination. Dr. Tejaratchi's most recent medical evaluation on record is a letter dated July 8, 1980, which states that claimant "has been suffering from peptic ulcer, chronic arthritis, chronic bronchitis and anxiety neurosis. [He] is presently disabled." (Tr. 93, 94).

Pursuant to Dr. Tejaratchi's recommendations, claimant consulted a psychiatrist, Dr. J.M. Herrera, in July of 1979. In a letter to the Bureau of Disability Determinations (Tr. 82–3), Dr. Herrera reported that Santiago evidenced no "abnormal pathology"; he did, however, diagnose Santiago as suffering from "alcohol addiction" and "inadequate personality." Dr. Herrera's letter stated in addition that Santiago "takes complete care of his personal needs and partial care of his living quarters. He listens to the radio, music, watches television, goes shopping, for walks, to the park, socializes and visits his doctor. His present life style is inconsistent with his allegations."

### B. *Procedural History*

Claimant first applied for Supplemental Security Income ("SSI") benefits on May 23, 1979, alleging that he was unable to work because of constant and extreme shakiness of the hands, pain from ulcers and in the joints of the arms and legs from arthritis, and frequent dizziness, blackouts and weakness. (Tr. 41). SSI benefits were denied, as was claimant's subsequent application for reconsideration. Santiago requested a hearing, which was granted and held on May 30, 1980 before an Administrative Law Judge of the Secretary's Bureau of Hearings and Appeals.

Claimant appeared *pro se* at his hearing, which was seventeen minutes long, including the time for translation of the ALJ's questions into Spanish and of the claimant's answers into English. Santiago himself was the only witness. The hearing transcript contains approximately two pages of

---

1. Transcript of proceedings relating to claim of Rafael Santiago, Acct. No. 581–44–5431, "Tr." hereinafter, submitted as exhibit accompanying defendant's answer.

questions and testimony regarding claimant's alleged disabling symptoms. In response to the ALJ's examination, Santiago testified that he couldn't work because of his ulcer and hernia operations, that he was "almost crazy from the pain," and that he had to lie down almost all the time.

About a month later, on July 7, 1980, the ALJ issued his decision that claimant was not "disabled" within the meaning of the Social Security Act, Title XVI, 42 U.S.C. §§ 1381–83c. Although the ALJ's opinion did not mention the reports of claimant's treating physician, Dr. Tejaratchi, the ALJ did place considerable emphasis on the report of Dr. Herrera, the psychiatrist, who examined claimant only once. In particular, the ALJ relied on Dr. Herrera's statements to the effect that "claimant's lifestyle is inconsistent with his allegations and that he can take care of all his personal needs." (Tr. 13). On the basis of this evidence, the ALJ concluded that, "[i]n view of the lack of any recent medical evidence to the contrary ... [t]he claimant does not have any impairment or impairments which significantly limit the ability to perform basic work-related functions." (Tr. 13).

Claimant subsequently filed a request that the ALJ's decision be reviewed by the Appeals Council of the Social Security Administration. He submitted as supplemental evidence the July 8, 1980 letter from Dr. Tejaratchi, quoted above, describing him as "presently disabled." On August 25, 1980, the Appeals Council denied review of Santiago's case (Tr. 4); thus the hearing decision stands as the final decision of the Secretary.

## II.

■ In order to qualify for SSI disability benefits, an applicant must show that he suffers from a medically determinable physical or mental impairment which is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the economy." 42 U.S.C. § 1382c(a)(3)(B). The claimant bears the initial burden of proving that his impairment prevents him from returning to his prior type of employment. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir. 1982). If the claimant meets that burden, the burden then shifts to the Secretary, who must show that there exists in the national economy alternative work which the claimant can perform. *Aubeuf v. Schweiker,* 649 F.2d 107 (2d Cir. 1981); *Parker v. Harris,* 626 F.2d 225 (2d Cir. 1980); *Bastien v. Califano,* 572 F.2d 908 (2d Cir. 1978).

■ A reviewing court must uphold the Secretary's conclusions where they are based on proper legal principles and supported by "substantial evidence" on the record as a whole. 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)). Where evidence has not been properly evaluated because of an erroneous application of the law, however, the determination of the Secretary will not be upheld. *Aubeuf v. Schweiker, supra,* 649 F.2d at 117; *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979); *Cutler v. Weinberger,* 516 F.2d 1282, 1285–86 (2d Cir. 1975). In cases such as the present one, where the claimant was not represented by counsel at his administrative hearing, the reviewing court has a special duty " 'to make a searching investigation of the record' to ensure that the claimant's rights have been adequately protected." *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir. 1980), quoting in part *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 43 (2d Cir. 1972). If this investigation indicates that the claimant has not been given an adequate hearing, the reviewing court should remand to the Secretary, even where the Secretary's original determination is technically supported by substantial evidence.[2] *Fernandez v. Schweiker,* 650 F.2d 5, 9 (2d Cir. 1981); *Cutler v. Weinberger, supra,* 516 F.2d at 1285.

---

2. Such action, although seemingly inconsistent with the reviewing court's duty to uphold any administrative decision supported by substantial evidence, is explained by the reasoning that evidence which is a "substantial" part of an insufficiently developed record may become less than "substantial" when viewed as part of a record which is adequately developed.

Applying these principles to the present case, I conclude that I must remand to the Secretary for several reasons. A review of the record and decision suggests that the ALJ applied improper legal standards in evaluating the evidence before him. I find in addition that claimant did not receive a fair and adequate hearing. Thus, in accordance with the decisions cited above, this Court may remand the case without reaching the issue of whether or not the Secretary's conclusions are supported by substantial evidence.

### III.

■ A review of the record indicates that the ALJ failed to give sufficient weight to the reports of claimant's treating physician, Dr. Tejaratchi. Dr. Tejaratchi stated, in his reports dated June 7, 1979 and September 21, 1979 that claimant was unable to use his hands for grasping, pushing, pulling or fine manipulations, unable to bend or squat, and unable to stand or even sit for more than two hours. (Tr. 79, 80, 87). These impairments would seemingly prevent claimant from performing his former jobs of welding and house painting, both of which require manual grasping and manipulation and, in the case of house painting, bending and prolonged standing. The ALJ's determination that claimant was not disabled is therefore difficult to reconcile with the treating physician's findings.[3] It appears that the ALJ discredited, or simply ignored, sections of Dr. Tejaratchi's reports. In so doing, he failed to apply proper legal standards to the evidence before him. It is established in this circuit that the opinion of a claimant's treating physician is binding on the Secretary in the absence of substantial evidence to the contrary. *Aubeuf v. Schweiker, supra,* 649 F.2d at 112; *Hankerson v. Harris, supra,* 636 F.2d at 896; *Parker v. Harris,*

*supra,* 626 F.2d at 232–233; *Gold v. Secretary, supra,* 463 F.2d at 42. In the present case, the ALJ did not point to any contradictory evidence which led him to discredit the treating physician's findings. Nor does the record contain any evidence that claimant's condition was not as represented by Dr. Tejaratchi. The letter from Dr. Herrera, on which the ALJ placed considerable reliance, merely asserted that claimant suffered from no disabling psychiatric impairments, and in no way refuted Dr. Tejaratchi's reports of claimant's physical infirmities. (Tr. 82–83). Possibly, the ALJ's firsthand observation of claimant led him to conclude that claimant was not impaired in the manner that Dr. Tejaratchi reported; but this Court is not required to guess at possible justifications underlying the ALJ's conclusions. *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). Since the record does not clearly indicate that the treating physician's reports were accorded due consideration, the case should be remanded, under principles set forth in a recent opinion of the Court of Appeals for this Circuit:

> "Cases may arise . . . in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record. . . . In such instances, we would not hesitate to remand the case for further findings or a clearer explanation of the decision."

*Berry v. Schweiker, supra,* 675 F.2d at 469. *See also, Cutler v. Weinberger, supra,* 516 F.2d at 1285 (case remanded where record did not clearly indicate that Secretary gave proper consideration to certain evidence).

■ Even if the ALJ had applied proper legal standards in his evaluation of the evidence, a remand of the case would still be necessary because the ALJ did not take adequate measures to safeguard the rights

---

**3.** It is possible that the ALJ accepted Dr. Tejaratchi's findings and concluded that claimant was in fact unable to return to his former work, but that claimant was still not disabled because he could perform *alternative* work. The ALJ did not, however, have a legally sufficient basis to form such a conclusion. In order to support a finding that a claimant can perform alternative work, the Secretary must make a particu-

larized showing of jobs available in the national economy which the claimant could perform in light of his residual abilities, age, education and work experience. *Parker, supra,* 626 F.2d at 233; *Bastien, supra,* 572 F.2d at 912. The record in the present case contains no mention of jobs or types of work which claimant might be able to perform.

of this *pro se* claimant. Where a claimant appears at his administrative hearing unassisted by counsel, the ALJ has a duty "scrupulously and conscientiously [to] probe into, inquire of, and explore for all relevant facts" surrounding the claim. *Hankerson,* 636 F.2d at 895; *Gold,* 463 F.2d at 43; *Cutler,* 516 F.2d at 1286. In a case such as the instant one, in which claimant was handicapped not only by lack of counsel but also by inability to speak English and lack of education, the ALJ's assistance is all the more necessary to a just adjudication of the claim. *Fernandez v. Schweiker,* 650 F.2d 5, 8 (2d Cir. 1981); *Cutler,* 516 F.2d at 1286; *Gold,* 463 F.2d at 43.

 As a basic part of his duty to assist a *pro se* claimant, the ALJ is required to help the claimant secure all relevant medical evidence. *Hankerson,* 636 F.2d at 896; *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63, 65 (2d Cir. 1980). There is nothing in the record which indicates that the ALJ in the present case made any effort to assist Santiago in this regard. It was improper, then, for the ALJ to deny claimant's application on the ground that it was not supported by sufficient medical evidence of disability. (Tr. 13). In a number of recent cases, the Court of Appeals for this Circuit found that a *pro se* claimant was denied a fair hearing because, *inter alia,* the ALJ entered judgment against the claimant without informing the claimant of his proposed action and affording an opportunity for the claimant to obtain additional evidence. *See, e.g., Hankerson,* 636 F.2d at 896; *Gold,* 463 F.2d at 44; *Cutler,* 516 F.2d at 1286. Before denying Santiago's application, the ALJ was obligated, at the very least, to advise Santiago that he considered his case unpersuasive, and to suggest that he produce additional medical evidence or call Dr. Tejaratchi as a witness.

 In addition, the ALJ erred in relying to the degree he did on the statements of Dr. Herrera. In sections of his letter, which have been quoted above, Dr. Herrera implied that Santiago's lifestyle was relatively active and self-sufficient, and that Santiago's allegations of disability were therefore dubious.[4] The ALJ quoted these sections in full in his opinion (Tr. 12), and cited them as principal grounds for his finding against claimant. (Tr. 13). The ALJ's error in so doing was two-fold. First, Dr. Herrera's vague description of Santiago's activities—which could have been based only on what Santiago himself told Herrera during their one meeting—had little probative value with regard to the issue of disability. As the Second Circuit noted in *Gold,* a claimant need not be completely helpless to be eligible for disability benefits, and the fact that a claimant engages in some light household tasks does not mean he is able to engage in substantial gainful activity. 463 F.2d at 41. Secondly, in failing to give Santiago an opportunity to challenge Dr. Herrera's statements, the ALJ fell short of his obligation to assist a *pro se* claimant. In a similar case, which involved a report by the same psychiatrist as in this case, the Second Circuit recently held that it was error for the ALJ to rely on the doctor's report without at least alerting the claimant to her power to subpoena and cross-examine the doctor. The court noted that:

> "This circuit has recognized that in cases of this type claimants' right to subpoena and cross-examine experts submitting reports adverse to their claims is important, particularly when there is 'substantial reliance' on the report by the hearing examiner. *Gullo v. Califano,* 609 F.2d 649, 950 (2d Cir. 1979). . . . While it is true in theory that the claimant could have subpoenaed Dr. Herrera, it could not be expected that she could do so in reality."

*Fernandez v. Schweiker, supra,* 650 F.2d at 8. Under the same reasoning, I must find here that, because the ALJ did not question claimant about Dr. Herrera's statements or

---

4. The relevant portion of Dr. Herrera's report reads as follows: "Mr. Santiago takes complete care of his personal needs and partial care of his living quarters. He listens to the radio, music, watches television, goes shopping, for walks, to the park, socializes and visits his doctor. His present lifestyle is inconsistent with his allegations." (Tr. 82).

suggest that claimant subpoena the doctor, claimant's right to confront a doctor submitting adverse reports was "not made meaningful." 650 F.2d at 8.

Accordingly, this Court remands this case to the Secretary for further proceedings consistent with this opinion.

It is So Ordered.