Minnie GOLD, Plaintiff-Appellant,

v.

The SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant-Appellee.

No. 785, Docket 72–1061.

United States Court of Appeals, Second Circuit.

Argued May 17, 1972.

Decided June 19, 1972.

---

David F. Dobbins, New York City (Royall, Koegel & Wells, New York City, William Haney, III, New York City, of counsel), for plaintiff-appellant.

Robert Rosenthal, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., for the Eastern District of New York, David G. Trager, Asst. U.S. Atty., of counsel), for defendant-appellee.

Before MOORE, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Mrs. Minnie Gold appeals from an order of the United States District Court for the Eastern District of New York (Jacob Mishler, Chief Judge) granting the government's motion for summary judgment and dismissing her complaint requesting that the court reverse a final decision of the Secretary of Health, Education and Welfare denying her a period of disability and disability benefits under the Social Security Act, 42 U.S.C. §§ 405(g), 416, 423. The sole issue for this court is whether the decision of the Secretary is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). We conclude that his decision is not so sustained and order it reversed and the case remanded for calculation of a period of disability and award of benefits to Mrs. Gold.

Mrs. Gold was born in Poland in 1911 and was raised in Germany, where she attended the equivalent of high school and took some business courses. She was forced into hiding in Belgium in 1943 and at that time contracted the tuberculosis from which her subsequent lung ailments have developed. On arrival in this country in July, 1949, she was detained for three weeks at the U.S. Public Health Hospital in New York for observation of her lung condition. She became a citizen in 1956. From 1950 to 1957, she worked at a total of thirty to forty jobs, most of which involved hand-sewing for women's garment manufacturers. Mrs. Gold testified at the hearing that she was discharged or forced to leave job after job because of ill health and lack of stamina. Her most prosperous year was 1952, in which she earned $1403; in only three of the next five years did she earn more than $500. In 1957 she "broke down" and received state disability payments for an unspecified period. She earned no income in 1958 or 1959; she testified that her doctor told her at that time to find work less exhausting than that of a seamstress.

In February 1959 the West German government awarded Mrs. Gold and her husband reparations for the treatment accorded them during the Second World War. Mrs. Gold received a total of $5800 and her husband received approximately $10,000.[1] They continue to receive small monthly pensions from that same source. Despite this influx of money, Mrs. Gold took a course in bookkeeping at the Madison Business School and, having received a "certificate of study" in October, 1959, she returned to work as a bookkeeper at the YMCA in February 1960. Although the work was light, Mrs. Gold found herself too ill to perform it. In March she contracted an active case of pneumonia and was forced to quit. She has not worked since.

On July 11, 1969 Mrs. Gold applied under the Social Security Act for the establishment of a period of disability, 42 U.S.C. § 416, and the payment of disability benefits, 42 U.S.C. § 423. When her application was rejected and the rejection sustained on reconsideration, she applied for a hearing. The examiner denied her claim and the Appeals Council affirmed the denial on April 2, 1970, making it the final decision of the Secretary. Mrs. Gold brought an action in federal district court pursuant to 42 U.S.C. § 405(g) for review of the agency decision. The district court felt that Mrs. Gold had done credibly on the difficult factual issues in the case but concluded that the decision of the examiner was based on "substantial evidence" and must be affirmed.

In order to qualify for disability payments under the Social Security Act, the wage earner must show disabili-

---

1. Mrs. Gold testified that the money was used mainly to repay debts contracted during the years of unemployment.

ty on or prior to the last date on which she was insured under the Act. 42 U.S.C. §§ 416(i), 423(c); Brandon v. Gardner, 377 F.2d 488 (4th Cir.1967). No one disputes that for Mrs. Gold that date was June 30, 1961. To receive benefits, Mrs. Gold must have been on or prior to that date unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). The claimant bears the burden of proving her disability with "such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d) (5).[2] The standard for eligibility is to be applied in light of the fact that "the Social Security Act is a remedial statute, to be broadly construed and liberally applied." Haberman v. Finch, 418 F.2d 664, 667 (2d Cir.1969). *See* Floyd v. Finch, 441 F.2d 73, 76–78, 104–105 (6th Cir.1971) (McAllister, Senior Circuit Judge, dissenting). This court, in reviewing the determination of the Secretary, must sustain that conclusion if it is supported by "substantial evidence" on the record as a whole. Franklin v. Secretary of HEW, 393 F.2d 640 (2d Cir.1968); Kerner v. Flemming, 283 F.2d 916 (2d Cir.1960); 42 U.S.C. § 405(g).

There was no doubt, as the examiner stated in his opinion, that appellant was totally disabled at the time of the hearing. The question is whether this condition existed prior to June 30, 1961, the crucial date for coverage under the Act. Unrepresented by counsel at the hearing, Mrs. Gold testified and presented numerous medical reports to support her claim.

A January 1963 report by Dr. Abraham Cohen, who treated appellant for her lung diseases, states that

> Mrs. Gold suffers from severe pulmonary fibrosis [3] with resultant chronic asthmatic bronchitis and bronchiectesis.[4] All this stems from tuberculosis which she incurred during 1943. As a result of this condition, she suffers severely from cough, expectoration, periodic hemoptysis,[5] wheezing and dyspnea [difficult or labored breathing]. Secondarily, she suffers from malnutrition and anemia. Consequently, I consider her disabled 100%.[6] She not only is unable to pursue a gainful occupation, but cannot carry out her household duties.

Thus, eighteen months after the expiration of her insured status, Mrs. Gold was found by her doctor to be totally disabled. "[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence

---

2. The elements of proof, or factors to be taken into account in assessing disability are (1) the objective medical facts; (2) diagnoses or medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by the claimant and family or others; and (4) the claimant's educational background, age, and work experience. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Hennig v. Gardner, 276 F.Supp. 622 (N.D.Tex.1967); Walker v. Gardner, 266 F.Supp. 998, 1002–1003 (S.D.Ind. 1967).

3. This is "a condition marked by a relative increase in the formation of interstitial fibrous tissue in [the lungs.]" This and the following definitions are

from Webster's Third International Dictionary.

4. This is "a chronic inflammatory or degenerative condition of one or more bronchi or bronchioles marked by dilation and loss of elasticity of the walls."

5. This is "expectoration of blood from some part of the respiratory tract."

6. To receive benefits under the Social Security Act, one need not be completely helpless or unable to function or as totally disabled as Mrs. Gold apparently was. "The mere fact that he is mobile and able to engage in some light tasks at his home does not alone establish that he is able to engage in substantial gainful activity." Mullen v. Gardner, 256 F.Supp. 588, 591 (E.D.N.Y.1966).

in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." Carnevale v. Gardner, 393 F.2d 889, 890 (2d Cir.1968).

Other doctors' reports tended to show that Mrs. Gold's disabling condition did exist in June of 1961. A 1969 report by Dr. Cohen states that he first saw her in 1956, when she complained of cough, wheezing, and dyspnea, indicative to him of inactive pulmonary tuberculosis and bronchiectasis. He saw her periodically from 1958 to early 1962; during that period she began to spit blood and was afflicted with gallstones and a thyroid condition.

Dr. Jacob Glenn, a general practitioner who treated Mrs. Gold in 1959 and thereafter, reported in January 1970 that he felt that Mrs. Gold's lung disease had incapacitated her since March 31, 1960, such that she was unable to work. Although he did not keep office records more than five years, he stated in the report that "Minnie Gold came to my office during [1960–1962] once or twice a month." The report also mentioned the gallbladder pathology and severe anemia. In 1960 Mrs. Gold also saw Dr. Henry Mason, who found her suffering from anemia, undernourishment, anxiety neurosis with depression, tachycardia [fluttering and rapid heart beat], and blood pressure problems. In early 1961 he noted "heaviness of chest" and tachycardia. She suffered a respiratory infection in May, 1961, was weak, malnourished and anemic in July and was coughing and spitting blood in August such that she was ordered to bed. In early 1962 she had another acute respiratory infection.

These reports, covering a time span encompassing 1961, make a strong case for the conclusion that Mrs. Gold was disabled as of June of that year.[7] In assessing disability, "all complaints [of a claimant] must be considered together in determining her work capacity." Burns v. Celebrezze, 234 F.Supp. 1019, 1020 (W.D.N.C.1964). The worsening lung condition must therefore be considered in the context of continuing anemia, malnutrition, gallbladder and heart difficulty. See Dunn v. Richardson, 325 F.Supp. 337 (W.D.Mo.1971); Mann v. Richardson, 323 F.Supp. 175, 177 (S.D.N.Y.1971).

"The expert opinions of plaintiff's treating physicians as to plaintiff's disability . . . are binding upon the referee if not controverted by substantial evidence to the contrary. Teeter v. Flemming, 7 Cir., 1959, 270 F.2d 871, 77 A.L.R.2d 636. Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916." Walker v. Gardner, supra, 266 F.Supp. at 1002. Yet the sole piece of medical evidence on which the examiner could have based his adverse decision was an answer to a question on an application for state disability benefits completed in April 1960 by Dr. Manfred Weinreb, now deceased. In the Doctors' Statement he noted that Mrs. Gold had bronchopneumonia. He reported the first date of treatment was March 29, 1960, and the most recent, April 25, the day he completed the form. He stated that she would be "able to perform usual work April 20, 1960."[8] The initial impact of this statement is

---

7. The examiner did not indicate to Mrs. Gold that she ought to call witnesses to supplement these reports; one of her doctors had apparently told her he did not want to be bothered unless it was essential. Nor is the absence of the conclusory term "disabled" from some of the reports as crucial as the government would have us believe, for a physician might not consider that essential in a contemporaneous record of symptoms. See Hennig v. Gardner, supra.

8. The prediction that Mrs. Gold would be able to return to work on April 20 is puzzling. The form was filled in five days later, when she was still being actively treated for the pneumonia. Appellant argues that the somewhat illegible handwriting reads "April 27" but that does not appear to be so. The record does not reveal whether Dr. Weinreb was still alive at the time of the hearing and could have been called to explain the statement.

reduced on examination of the instructions on the form, which read:

> The doctor's statement must be filled in completely. For item 6–d [date claimant will be able to perform usual work] give approximate date. Make some estimate. Delay in payment of Disability Benefits may be prevented.

Thus, the doctor's statement was not made spontaneously; in order to obtain benefits speedily for his patient, he was required to hazard a guess on the date of return to work.[9] In addition, this cryptic notation was made fourteen months before the determinative date for Social Security benefits, giving it less than substantial probative force.[10]

The other factor which obviously influenced the examiner, though he did not mention it explicitly in his opinion, was his feeling that the receipt of reparations motivated Mrs. Gold to quit work. However, she had been unable to work for reasons of health for more than a year before the payments arrived, and shortly after receipt of the money she enrolled at a business school and began a new type of job, less arduous than her previous work. This behavior is not consistent with malingering.

■■ Thus, we find the answer on the disability form, in light of the surrounding circumstances, and the examiner's negative assessment of credibility, which seems somewhat inconsistent with established facts, insufficient to constitute substantial evidence supporting the decision. We have reviewed the evidence in detail because we are mindful that in a case in which the claimant is handicapped by lack of counsel, ill health, and inability to speak English

well, the courts have a duty to make a "searching investigation" of the record. Miracle v. Celebrezze, 351 F.2d 361, 382–383 (6th Cir.1965). See Scott v. Celebrezze, 241 F.Supp. 733, 736 n. 21 (S.D.N.Y.1965). We feel particularly compelled to do so here, as the attitude of the examiner as revealed in the transcript hardly measured up to his statutory duty. Hearings under the Social Security Act are non-adversary, Blanscet v. Ribicoff, 201 F.Supp. 257 (W.D.Ark. 1962); "rights and privileges are in issue and [when] the guiding hand of counsel is not present to advocate their existence, a duty devolves on the hearing examiner to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts surrounding the alleged right or privilege." Hennig v. Gardner, supra, 276 F.Supp. at 624–625. See Arms v. Gardner, 353 F.2d 197 (6th Cir.1965); Zeno v. Secretary of HEW, 331 F.Supp. 1095 (D.P.R. 1970); Stewart v. Cohen, 309 F.Supp. 949 (E.D.N.Y.1970); Staskel v. Gardner, 274 F.Supp. 861 (E.D.Pa.1967).

■ In this case the examiner did not grant Mrs. Gold a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act. 20 C.F.R. § 404.927; DeGracia v. Secretary, 248 F.Supp. 522 (D.P.R. 1966); Ihnen v. Celebrezze, 223 F.Supp. 157 (D.S.D.1964). Although the notice of hearing stated that the claimant could bring counsel or a representative to the hearing, the examiner did not suggest when she appeared alone, that she obtain legal aid. His intolerance of her confusion and inability to digest the written exhibits with which she was faced shortly before the hearing began, his failure to call witnesses or to indicate that she

9. Mrs. Gold testified that at this time Dr. Weinreb advised her to quit work altogether because of her illnesses. One may therefore surmise that for purposes of the form he restricted his consideration to the most acute symptoms of the then current bout with pneumonia. We do not know that this was the case, of course, and would not rely on this inference alone to find the report less than sufficient to support the examiner's decision.

10. This is not to suggest that medical reports unsupported by live testimony cannot constitute substantial evidence supporting a decision adverse to a claimant who testifies and produces other written and oral testimony. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In that case, the medical reports adverse to the claimant's position were numerous and detailed.

ought to do so because he considered her case unpersuasive, and his concern in eliciting information about her job history and the reparations to the exclusion of almost all else compounded Mrs. Gold's difficulties and provided her with less than a fair hearing. Dunn v. Richardson, 325 F.Supp. 337, 345 (W.D.Mo. 1971); Erwin v. Secretary, 312 F.Supp. 179 (D.N.J.1970).

For this reason, were there serious uncertainties or gaps in the record, we would remand to the Secretary for the taking of more evidence. Letters from appellant's physicians, supportive of her claim but received after the administrative decision, could be introduced and the doctors called to testify. But as we feel that the bulk of their testimony would only be amplification of the facts already in the record, and as we find in the record persuasive proof that Mrs. Gold suffered from chronic degenerative diseases of the lungs, exacerbated by numerous other medical problems, such that she could not work on or prior to the expiration of her insured status, we see no need to reopen the case for more evidence. The order of the district court is reversed and the case remanded to the Secretary for establishment of a period of disability and payment of benefits to Mrs. Gold.