**Richard WIGHTMAN, Plaintiff,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, Defendant.**

**Civ–78–643.**

United States District Court, W. D. New York.

May 12, 1980.

Southern Tier Legal Services, Corning, N.Y. (Paul M. Ryther, Corning, N.Y., of counsel), for plaintiff.

Richard J. Arcara, U.S. Atty., Buffalo (Michael A. Brady, Asst. U.S. Atty., Buffalo, N.Y., Frank V. Smith, III, Acting Regional Atty., Region II and Marla G. Simpson, Asst. Regional Atty., Dept. of Health, Education and Welfare, New York City, of counsel), for defendant.

CURTIN, Chief Judge.

*FACTS*

This is a Social Security disability case in which the claimant moves to reinstate his reduced benefits. The case involves several novel legal issues so I have set out the facts in some detail.

Plaintiff Richard Wightman is disabled. There is no dispute about his eligibility for Supplementary Security Income [SSI] benefits.[1] He lives with his mother and stepfather in Wellsville, New York. He has his own room, but takes his meals together with the rest of the household. Until November 1976 he received $175.98 per month in SSI benefits.[2] The family's combined household expenditures come to $411.17 per month.[3] In order to carry his share of these expenses, Mr. Wightman made three kinds of contributions to the household: (1) he made cash payments of $115 per month from his SSI check; (2) he purchased $5 in groceries per week for the household; and (3) he made in-kind contributions in the form of doing housework and cooking family meals.

In November 1976, the Social Security Administration [SSA] conducted one of its "periodic redeterminations" of plaintiff's eligibility for SSI benefits. SSA determined that plaintiff was "living in the household of another" and was accordingly subject to a one-third reduction of the federal payment amount included in his SSI benefits. Plaintiff's benefits were reduced from

1. In fact, the nature of plaintiff's ailment does not appear in any of the papers before the court.

2. This SSI benefit had the following components:

| $ 167.80 | Federal Payment Amount |
| 8.18 | N.Y. State Supplemental Payment |
| $ 175.98 | TOTAL BENEFIT |

3. Although the ALJ would apparently include the $20 average monthly phone bill, this is clearly error, 20 C.F.R. § 416.1125(b)(5), and

$175.98 to $120.05,[4] resulting in his being unable to continue making the same cash and grocery contributions to his family. Without aid of an attorney, plaintiff appealed against the $55.93 reduction in benefits. On August 3, 1977 the Administrative Law Judge [ALJ] affirmed the action of SSA, relying on 20 C.F.R. § 416.1125(b). The judge held:

> [A] beneficiary's supplemental security income benefits are to be reduced by one-third if the beneficiary lives in the household of another from whom he is receiving room and board. The same section further provides that the one-third reduction will apply regardless of whether the individual is making any payment for support and maintenance (room and board) to the person whose household he is living in.[5]

Plaintiff has exhausted his administrative remedies and the case is here on appeal.[6]

*LAW*

It is true that 42 U.S.C. § 1382(a)(2)(A), as amended in 1977, does say that receipt of in-kind support and maintenance from a person in whose household the disabled person is living will result in a one-third reduction in the federal payment amount of SSI benefits. This would seem to cover our case. The Secretary of HEW, however, has promulgated regulations which define what constitutes living in "another person's household." These regulations have an exception for individuals "paying at least a pro rata share of the average monthly total household operating expenses." 20 C.F.R. § 416.1125(b)(3)(iv). The definition of the term "total household operating expenses" includes the following statement:

> A pro rata share of total household operating expenses is determined by dividing the monthly average of these expenses by the number of persons in the household regardless of age or individual consumption of any of the items. Payment of an amount which is within $5 of the monthly pro rata share is considered to meet the pro rata requirement.

20 C.F.R. § 416.1125(b)(5).

Because of this exception for beneficiaries who contribute their pro rata share of household expenses, the outcome of our case depends on the status of the plaintiff's contributions. There can be no dispute that the $115 cash transfer is the kind of payment which the Secretary had in mind in promulgating his regulation. Plaintiff here, however, also contributed $5 per week worth of food toward the common household's needs. Using the Secretary's averaging factors, this amounts to an additional contribution of $21.67 per month.[7] Defendant does not dispute that the addition of groceries is also includable in calculating plaintiff's "contribution." The regulation does not require that the applicant make his pro rata share of average monthly total household operating expenses in cash. The test is whether a sufficient contribution

the government's brief expressly acknowledges that expenditures shared in common by household members come to $411.

4. Since plaintiff's federal payment amount was $167.80 originally, a reduction of one-third left the figure at $111.87. State supplemental payments remained unchanged at $8.18, for a total SSI benefit after the reduction of $120.05.

5. Although the decision refers to a one-third reduction in SSI benefits, it is apparent that the one-third reduction was from the federal payment amount of the SSI benefit.

6. A hearing was held before the ALJ on July 20, 1977 and decision was rendered on August 3, 1977. The Appeals Council affirmed on March 2, 1978 on the grounds that the record before the ALJ indicated Mr. Wightman contributed only $115 to the household for both room and board. The Appeals Council subsequently reviewed this case again and concluded that while the ALJ had considered the allegation that the claimant contributed an extra $5 a week to the family, the Council determined that the ALJ did not accept the allegation as true. On August 23, 1978 the Council agreed to extend the time for plaintiff to appeal to this court and plaintiff did timely file this complaint.

7. SSI budgeting of eligibility is performed on a quarterly basis (52 weeks per year × 25% = 13 weeks). 42 U.S.C. § 1382(c)(1). The $21.67 figure is arrived at by multiplying the weekly amount, $5.00, by an averaging factor, 4.33 (13 weeks divided by 3 months per quarter).

was made, not what form did the contribution take.

Plaintiff's pro rata share of his three-person household's $411.17 monthly expenses is $137.06. The combination of the $115 monthly cash payment with the additional in-kind contribution of groceries worth $21.67 means that plaintiff contributes a total of $136.67. This is well within the $5 per month deviation from plaintiff's required pro rata share countenanced by the statute. 20 C.F.R. § 416.1125(b)(5). The Secretary's memorandum acknowledges that "if proven" these combined contributions would be sufficient to constitute payment of a pro rata share of expenses.

■ The government's position has changed somewhat over the course of this litigation. At first the government took the highly formalistic position that only if plaintiff were to "modify" his living arrangement, for example, by "renting" a room from his family, could the fair market value of the leasehold be deducted from the grant on a dollar-for-dollar basis. 20 C.F.R. § 416.1125(d). Such artificial legal calisthenics, not to say subterfuge, are not necessary, however. The Secretary has interpreted 42 U.S.C. § 1382a(a)(2) so as to permit the plaintiff's family living arrangement. The regulations are clear on this point. Where the beneficiary is living in the same household with non-recipients, the one-third automatic reduction in federal payment amount only comes into effect when the SSI recipient receives a *net* contribution toward his food and shelter from the other members of his household.[8] Here the allegations are that the plaintiff receives no such contribution as he pays his way, within his family.

The government's other argument concedes that a total monthly contribution of $136.67 would be sufficient to meet the test in the Secretary's regulations, 20 C.F.R. § 416.1125(b)(3)(iv), but maintains that the record "reveals an insufficient basis for such a finding." The government argues that the ALJ's findings indicated a credibility determination against plaintiff on the question of the contribution of the $5 in groceries per week.[9] The government specifically acknowledges that the record indicated plaintiff did contribute $115 to the household.[10]

The court has reviewed the record and the ALJ's decision with great care. The statements on the record concerning the $115 cash payment were made in the same manner, by the same witness, and at the same time as statements concerning the $5. It is very difficult to discern from the written record why these two statements should be regarded differently. This kind of credibility determination, however, is best left to the trier of facts who is in a position to use information not revealed by a dry written record, such as voice intonation and general demeanor of the witness, in assessing a witness's credibility. Where such credibility findings are made, a reviewing district court must rely on the good judgment and reasoning of the ALJ, as set forth in his written decision.

■ Contrary to the government's argument, however, this is not the case here. It is apparent that the ALJ did not make a credibility determination adverse to plaintiff. The ALJ appears to have considered plaintiff's uncontradicted testimony, accepted his statements concerning the $5 weekly purchase of groceries as true, but to have deemed himself compelled by a narrowly drawn statute to rule as he did. The ALJ's

---

8. There are, of course, other restrictions on the one-third reduction rule. For example, the individual can show he does not receive *both* food and shelter from another member of his household or that he has some ownership interest in the home. *See, e. g.,* 20 C.F.R. § 416.-1125(b)(3)–(b)(6), and (c)(1).

9. See n.6.

10. "However, the record before the administrative law judge indicated that Mr. Wightman contributed only $115 to the household for *both room and board.* There was no indication by Mr. Wightman or his mother that any portion or all of this payment was just for either room or board."
Letter from Appeals Council, March 2, 1978 (emphasis in original).

decision in fact is completely devoid of *any* direct mention of plaintiff's credibility, much less an adverse finding as to one allegation. Had the ALJ in fact reached different credibility determinations as to the two kinds of contributions, surely some discussion of why he had made such a subtle distinction would be necessary. Finally, in concluding his discussion of the law and facts, the ALJ used the following revealing words:

> The undersigned [ALJ] is most sympathetic to the plight of the claimant, but is required to follow the appropriate law in making a decision in this case.

This is hardly the language of a jurist concurrently making an adverse credibility determination, *sub silentio.*

### REMEDY

■ The discretion of the district court is exceedingly limited in these cases. The usual course where there is error is to remand to the Secretary. *Gold v. Sec. of HEW,* 463 F.2d 38, 44 (2d Cir. 1972). However, no useful purpose would be served by a remand in this case. The facts are set out in the ALJ's opinion. The law, as set out above, compels the only outcome, which is judgment for plaintiff.[11]

The Secretary's finding that plaintiff's monthly federal payment amount must be reduced by one-third is set aside. Plaintiff shall receive the retroactive benefits to which he was entitled.

Defendant shall submit a judgment, on notice to the plaintiff, on or before May 21, 1980.

So ordered.

---

11. As this means that plaintiff met his pro rata monthly share of household expenses, I have no occasion to consider how to set a value on plaintiff's other contributions to the household, such as his doing housework and cooking meals.