**Aurea RODRIGUEZ, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Defendant.**

No. 84 Civ. 6008 (CES).

United States District Court,
S.D. New York.

Oct. 15, 1985.

Marshall Green and Anthony V. Alfieri, Legal Aid Soc., Michael L. Perlin and Peter Margulies, Federal Litigation Clinic, New York Law School, New York City, Helen D. Rosen, Lisa DeMizio, Law Interns, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., Neil S. Mann, Asst., U.S. Atty., New York City, for defendant.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff Aurea Rodriguez brings this action under 42 U.S.C. § 1383(c) seeking review of a final decision of the Secretary of Health and Human Services ("the Secretary") denying her application for Supplemental Security Income ("SSI") benefits. Before us are cross-motions for judgment on the pleadings. For the reasons stated, the determination of the Secretary is reversed, and the case is remanded.

### Factual Background

Rodriguez was born in Puerto Rico in 1938. She has a sixth-grade education, and her ability to communicate in English is limited. A divorced mother of several children, Rodriguez has never worked. She lives alone in a second-floor walk-up apartment and is assisted by a housekeeper three times a week (Tr. 19–23, 27).

In recent years, Rodriguez has been treated for diabetes, osteomyelitis (inflammation of bone caused by infection), arthralgia (pain in a joint), asthma, and depression. Since 1981, she has been hospitalized at least four times, three of those times for periods of a month or more (Tr. 82, 92, 109, 121). In 1983, her left great toe was amputated (Tr. 128).

At her hearing before Administrative Law Judge Jeffrey Kohlman ("the ALJ") on December 16, 1983, plaintiff testified that she spends most of the day lying down, experiences pain after sitting for fifteen minutes, and requires a cane to stand or walk. Rodriguez said she can stand for five minutes and can walk only two blocks. However, plaintiff also stated that the pain is controlled by medication, and that she is able to leave her apartment three times a day to take short walks, shop, and visit friends. She also does some cooking and housework when her housekeeper is not there (Tr. 26–29).

Rodriguez submitted reports from three treating physicians at Montefiore Hospital and Medical Center. Dr. S. Rose stated that Rodriguez suffers from diabetes, arthralgia, and depression (Tr. 128). Dr. Doen verified that plaintiff has diabetes mellitis, which resulted in amputation of her toe, and has an indolent plantar ulcer on her left foot (Tr. 129).

Dr. G. Raskin was plaintiff's only treating physician to report on plaintiff's medical condition and physical capabilities in detail. He reported diabetes, arthralgia, and depression. Dr. Raskin stated that Rodriguez's diabetes is controlled by diet alone, but complications from diabetes have included recurrent foot infections, osteomyelitis, and amputation of a toe. He noted that plaintiff has "frequent pain in both ankles and feet." Dr. Raskin also indicated that Rodriguez has suffered from depression for many years and experiences feelings of "isolation, fear, and sadness" as well as "suicidal ideation." He added that she was to begin seeing a psychologist (Tr. 130–33).

In his assessment of Rodriguez's physical abilities, Dr. Raskin found plaintiff "fully able" to sit, but with "very limited" ability to stand and walk, requiring the use of a cane for balance and support. He also concluded that her ability to lift is "limited" due to "general fatigue [and] arthralgia." While bending, pushing, and pulling are "difficult" for plaintiff, she can handle objects and see, hear, and speak without limitation (Tr. 134–35).

The medical record also includes reports from several consulting physicians. Dr. H. Glucksberg diagnosed status post fracture and osteomyelitis of the left foot. He observed that Rodriguez limps and cannot apply pressure to her left foot. He added, "she has constant pain now and has to ... use a cane to walk and even that is painful" (Tr. 104). In his residual functional capacity evaluation, Dr. Glucksberg concluded that plaintiff can sit for eight hours, occasionally lift up to ten pounds, occasionally bend or squat, and repeatedly use her hands for fine manipulations. However, she can neither stand nor walk at all during an eight-hour day, nor can she carry even light items (Tr. 106–07).

Plaintiff's second consultative examination was performed by Dr. J. Parrinello. Dr. Parrinello's diagnostic impression was a history of chronic osteomyelitis involving the left foot, status post healed fracture, chronic lymphedema involving the left foot and leg, and a history of bronchial asthma (Tr. 110–11).

Following Dr. Parrinello's report, review physician Dr. Kovary evaluated plaintiff's residual functional capacity. He found that plaintiff can sit about six hours per day and can occasionally stoop, kneel, crawl, and lift or carry less than ten pounds. Her ability to reach, handle, finger, feel, see, hear, and speak is unlimited. He concluded, however, that she can never climb, balance, or crouch, and "cannot walk or stand for extended periods" (Tr. 117–19).

### The ALJ's Determination

The Secretary has established a five-step sequence for determining eligibility for SSI. 20 C.F.R. § 404.1520; *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Based on the medical evidence and on Rodriguez's testimony, the ALJ concluded that Rodriguez had met her burden on the first four steps by proving that she suffers from a severe impairment—diabetes with amputation of the toe and ulcers of the foot—that prevents her from doing her past work (Tr. 7). Because plaintiff established a prima facie case of disability, the burden on the fifth step shifted to the Secretary to prove that given plaintiff's residual functional capacity, age, education, and past work experience, she can perform other jobs which exist in significant numbers in the national economy. *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir.1983); *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir.1983).

To determine Rodriguez's residual functional capacity, the ALJ relied on the medical record, Rodriguez's description of her daily activities, and his observations of her during the hearing. While he noted that Rodriguez had difficulty walking, he observed "no manifestations of pain while sitting" (Tr. 8). He found "some indication

of depression as would be expected but no signs of severe mental impairment." *Id.* He therefore found no nonexertional limitations (Tr. 9). The ALJ further stated that in spite of Rodriguez's severe diabetes, she can "perform the physical exertion requirements of work except for work involving extensive standing, walking, lifting, and carrying." *Id.* He therefore concluded that she can perform the full range of sedentary work as defined in 20 C.F.R. 416.967. *Id.*

The ALJ then turned to the medical-vocational grid in 20 C.F.R. Subpart P, App. 2, which directs a determination based on the claimant's residual functional capacity, age, education, and skill experience. He applied Rules 201.18 and 201.24, which direct a finding of "not disabled" if the claimant is a younger individual, of limited education, literate in English, with no previous work experience, and capable of sedentary work. *See* Tr. 9.

### Discussion

A reviewing court must affirm the Secretary's denial of benefits if the denial is supported by substantial evidence and if the ALJ employed the correct legal standard. *Felshina v. Schweiker*, 707 F.2d 71, 72 (2d Cir.1983); *Berry*, 675 F.2d at 467. We find that the ALJ's contention that plaintiff can perform the full range of sedentary work is not supported by substantial evidence. Accordingly, the ALJ employed the incorrect legal standard in reaching his conclusion of "not disabled."

According to Social Security Administration regulations, sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. 416.967(a). By definition, a sedentary job involves sitting, but "a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

■ Nothing in Rodriguez's description of her daily activities and symptoms indicates an ability to perform sedentary work. Plaintiff testified that pain in her legs and

feet severely restricts her ability to walk, stand, sit, climb, and lift. Even with a cane, she can walk only two blocks and stand for five minutes. She stated that she tends to drop everything. Because she begins to experience pain after sitting for fifteen minutes, she lies down during most of the day (Tr. 26–28). As Rodriguez describes her condition, she is wholly incapable of performing any kind of work, let alone meeting the demands of the full range of sedentary work.

It was, of course, in the ALJ's discretion to reject the plaintiff's self-serving testimony. *See Spicer v. Califano*, 461 F.Supp. 40, 47 (N.D.N.Y.1978). However, plaintiff's allegations of disabling pain are corroborated by both treating and consulting physicians. Dr. Raskin, plaintiff's treating physician, reported that plaintiff has "frequent pain in her ankles and feet" (Tr. 130). He found her ability to stand and walk "very limited." Her ability to lift is "limited" due to general fatigue and arthralgia. Moreover, bending, pushing, and pulling are "difficult" for plaintiff (Tr. 134–35). The expert opinions of a treating physician are binding on the factfinder unless contradicted by substantial evidence to the contrary. *See Parker v. Harris*, 626 F.2d 225, 232 (2d Cir.1980).

Dr. Glucksberg, a consulting physician, also stressed plaintiff's reliance on a cane and the "constant pain" she experiences (Tr. 104). He concluded that she cannot walk or stand at all during a work day, nor can she ever carry items (Tr. 106–07).

A claimant's subjective evidence of pain, when accompanied by objective medical evidence, as exists here, is entitled to great weight. *Rivera*, 717 F.2d at 725 (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.1979)). In discrediting plaintiff's assertion of severe, disabling pain, the ALJ apparently relied on his own observations of Rodriguez during her hearing. He observed "no manifestations of pain while sitting" (Tr. 8). The ALJ's observation, being that of a lay person, is entitled to only limited weight, particularly in light of the countervailing physicians' reports

and plaintiff's testimony. *See De Leon v. Secretary of Health and Human Services*, 734 F.2d 930, 935 (2d Cir.1984); *Rivera*, 717 F.2d at 724. More importantly, the ALJ's decision inexplicably contradicts the minutes of the hearing itself, which reflect that Rodriguez apologized to the ALJ for crying because her feet were hurting her, and that he instructed her to "compose" herself (Tr. 24).

The ALJ's reliance on Rodriguez's testimony that she "does some cooking and goes at times for errands" (Tr. 8) to conclude that she is capable of sedentary work is similarly misplaced. The fact that Rodriguez takes short walks and does light housekeeping is not inconsistent with her assertion that pain and other impairments prevent her from engaging in substantial gainful employment. "To receive benefits under the Social Security Act, one need not be completely helpless or unable to function." *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 41 n. 6 (2d Cir.1972).

■ Because Rodriguez is incapable of performing the full range of sedentary work due both to exertional and nonexertional impairments, the ALJ erred in relying on the medical-vocational grid. *See McAndrew v. Heckler*, 562 F.Supp. 1227, 1234 (S.D.N.Y.1983). The grid is to be used only where the characteristics of the claimant identically match the criteria of a particular rule. 20 C.F.R. Subpart P, App. 2, § 200.00(a). The grid is inapplicable if the claimant has a nonexertional impairment. *Id.* at § 200.00(d)-(e). *See also Santise v. Schweiker*, 676 F.2d 925, 935 (3d Cir.1982); *Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662, 666 & n. 9 (1st Cir.1981). Thus, the ALJ should have given full consideration to all of the relevant facts and provided particularized proof of plaintiff's ability to perform specific jobs.

■ Mechanical application of the grid was also inappropriate in light of the uncertainty surrounding Rodriguez's English language abilities. The ALJ applied the grid category of "at least literate and able

to communicate in English" to Rodriguez. *See* 20 C.F.R. Subpart P, App. 2, §§ 201.18 and 201.24. The record indicates that Rodriguez testified through a Spanish interpreter (Tr. 15). Moreover, two Social Security Administration officials who interviewed plaintiff determined that she spoke "very little" English (Tr. 43, 64), while a third remarked that she exhibited a "lack of command of the English language" (Tr. 56). Rodriguez's testimony that she converses with shopkeepers and neighbors in English is not conclusive of her ability to communicate in English for the purposes of the grid. *See Vega v. Harris*, 636 F.2d 900, 904 (2d Cir.1981).

■ We reverse and remand not only because the ALJ's determination is not supported by substantial evidence and because he employed the wrong legal standard, but also because the ALJ failed to meet his special duties owed to Rodriguez as a pro se claimant. *See Bluvband v. Heckler*, 730 F.2d 886, 895 (2d Cir.1984). An ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* at 892, (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980)). This duty is particularly pronounced where, as here, "the claimant is handicapped by lack of counsel, ill health, and inability to speak English well." *Id.* (quoting *Gold*, 463 F.2d at 43). The ALJ failed to obtain critical medical evidence, including recent hospital records and psychiatric reports. He also failed to advise Rodriguez of the desirability of calling witnesses and of acquiring more detailed medical statements. As mentioned earlier, the ALJ did not sufficiently develop the record regarding Rodriguez's fluency in English.[1] We thus cannot conclude that Rodriguez has had "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the act." *Lopez v. Secretary of Health and Human Services*, 728 F.2d 148, 149 (2d Cir.1984) (quoting *Gold*, 463 F.2d at 43).

We remand to the Secretary for further development of the evidence. The Clerk of the Court is directed to dismiss the complaint without prejudice.

SO ORDERED.

---

**1.** We note that even if the Secretary establishes on remand that Rodriguez is capable of performing the full range of sedentary work, a finding that she is "illiterate or unable to communicate in English" would require a "disabled" determination according to the grid. See 20 C.F.R. Subpart P, App. 2, § 201.17.