**Albina T. KELLEY, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 88–0400–MA.**

United States District Court, D. Massachusetts.

June 16, 1988.

John Fisher, Medford, Mass., for plaintiff.

Frederick E. Dashiell, Asst. U.S. Atty., for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is an action brought pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1983), to review a final decision of the Secretary of Health and Human Services ("the Secretary") denying the plaintiff, Albina T. Kelley, disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Kelley contends that the decision of the Secretary should be reversed as it is not supported by substantial evidence, and seeks summary judgment. The Secretary opposes the motion. For the reasons set forth below, I reverse the Secretary's decision.

I.

The plaintiff filed an application for Title II benefits on October 16, 1985, seeking benefits dating from August 9, 1985, alleging an inability to work due to her illiteracy, borderline retardation and limited cognitive abilities, anxiety, inability to concentrate, and visual-motor deficiencies. Kelley, at the time of the alleged disability, was 44 years old, had attended special classes until age 16, and had been employed as a homemaker and domestic worker in private homes since 1975.

The plaintiff's application was initially denied by the Social Security Administration on January 30, 1986. The application was reconsidered, and again denied on April 16, 1986. A *de novo* hearing was held on September 12, 1986 before an Administrative Law Judge ("ALJ"), who issued an opinion denying the plaintiff's application for benefits on January 30, 1987. This became a final decision of the Secretary on December 31, 1987, when the Appeals Council approved the ALJ's decision. This action followed.

II.

This Court is called upon to perform a limited task in reviewing the final decision of the Secretary in this matter. This Court is only to determine whether the findings of the Secretary are supported by substantial evidence in the record; where they are, those findings are conclusive. 42 U.S.C. § 405(g); *Burgos Lopez v. Secretary of Health and Human Services,* 747 F.2d 37, 39 (1st Cir.1984), *citing Falu v. Secretary of Health and Human Services,* 703 F.2d 24, 28 (1st Cir.1983). The Secretary's findings must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir.1981), *citing, inter alia, Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). Nevertheless, a district court can reverse the decision of the Secretary if it is not supported by substantial evidence in the record, and a rehearing

would serve only to delay the award of benefits. *Dunbar v. Califano,* 454 F.Supp. 1261, 1268 (W.D.N.Y.1978), *citing Gold v. HEW,* 463 F.2d 38, 44 (2d Cir.1972).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that might lead to death or is expected to last or, indeed, lasts for at least twelve months. 42 U.S.C. § 423(d)(1)(A). To be considered disabling, an impairment must be so severe that the claimant "is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ..." 42 U.S.C. § 423(d)(2)(A).

### III.

In this matter, the ALJ evaluated Kelley's claim under § 12.05(C) of 20 C.F.R. ch. III, Part 404, Subpt. P, Apdx. 1. Under that provision, a claimant is considered disabled where that person demonstrates

> [a] valid verbal, performance, or full scale I.Q. of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function.

The ALJ found that, in the most recent I.Q. test taken by Mrs. Kelley, her verbal I.Q. was evaluated at 66.[1] Thus, the issue in this case is whether Mrs. Kelley has any physical or mental impairments "imposing additional and significant work-related limitation of function." As the First Circuit has noted, "[a]n impairment imposes significant limitations when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Nieves v. Secretary of Health and Human Services,* 775 F.2d 12, 14 (1st Cir.1985) (footnote omitted); *see also* 20 C.F.R.

§ 404.1520(c) (defining "severe impairment" as one "which significantly limits your physical or mental ability to do basic work activities").

In her decision, the ALJ found that "the claimant could not perform her past regular work activity as a homemaker because she could not perform the required reading and writing." Transcript at 23. The ALJ also indicated that, except for Mrs. Kelley's illiteracy,

> [t]here is no indication of any other physical or psychiatric impairment of any type, other than some depression and anxiety concerning her inability to conquer illiteracy and difficulty in finding a job. . . . there is no indication of any other significantly limiting impairment of any type. Since this is the case, the claimant does not meet the requirements of a listed impairment found at section 12.05 ...

Transcript at 22.

Although I find there is substantial evidence in the record to support the ALJ's finding that Mrs. Kelley suffers from no *physical* impairments, I do not find substantial evidence in the record to support her conclusion that Mrs. Kelley is not suffering from any significant *psychiatric* impairments that significantly limit her work-related activities. The plaintiff highlights three problems that should be considered as constituting mental impairments satisfying the requirements of § 12.05(C)—her inability to concentrate, motor-visual deficiencies, and anxiety. I find that Mrs. Kelley's anxiety and related problems constitute a significant impairment not adequately considered by the ALJ.

The ALJ seems to dismiss Mrs. Kelley's anxiety and depression as fairly insignificant. The ALJ evidently rejects the opinion of some of the experts who have filed reports in this matter concerning Mrs. Kel-

---

1. The doctor who administered this test, Dr. Theoharis K. Seghorn, noted that Kelley's "Verbal scores on this evaluation are lower than previously achieved, perhaps reflecting her anxiety level throughout this evaluation." Transcript, at 140. Despite this observation, Dr. Seghorn did not indicate that Kelley's apprehensions had invalidated the test. Since the regula-

tions only call for a "valid" I.Q. score, I find that the above score is adequate to fulfill the requirements of § 12.05(C). *Cf. Nieves v. Secretary of Health and Human Services,* 775 F.2d 12, 14 (1st Cir.1985) ("courts do not engage in further inquiry as to the first (I.Q.) requirement of Listing 12.05(C) once they find that the claimant's I.Q. was below 70") (footnote omitted).

ley's psychological well-being; as the ALJ herself noted, for instance, Dr. Mortimer Schnee, one of the examining doctors "felt ... [Mrs. Kelley] was suffering from a psychological or learning disability." Transcript, at 22. An examination of the record in this case, however, indicates that Mrs. Kelley's psychological difficulties stemming out of her anxiety and depression are significant and actively hinder her cognitive abilities, and may thus interfere with her work performance. In their report concerning Kelley, for example, Dr. M. Ann Viets, a counseling psychologist, and Dr. Sterling I. Colten, a licensed psychologist, remarked extensively concerning Kelley's psychological limitations:

> The client['s] ... language usage was characterized by ... repeated self deprecatory remarks. Anxiety signs, such as apprehension and compensatory psychomotor activity, were noted in her expressions of inadequacy and concern with the correctness of her responses. Her general attitude may be described as alert but somewhat antagonistic and depressed....
>
> This is an individual who presented herself throughout the session in a very defensive and defeatist manner. Her expressions of inadequacy indicated almost a total lack of self-confidence and premonition of inevitable failure. Her ability to cope with her environment would appear to be rigid and inflexible, an approach which ... has proven inadequate and ineffective. This sense of helplessness has produced a considerable amount of tension, anxiety and depression from which the client feels unable to escape.

Transcript, at 123, 126.[2]

Viets and Colten also note that these feelings of anxiety have interfered with Mrs. Kelley's intellectual performance:

> The general impression of the [I.Q. test] is that of an individual who is currently functioning at a level consistent with her basic endowment except in those areas which might be adversely effected [sic]

by the presence of anxiety.... Her ... performance in evaluative environments, especially those requiring the processing of cognitive material and visual-motor functioning, would be effected [sic] by anxiety.

Transcript, at 124.

The doctors also indicated that anxiety experienced by Kelley affects her ability to concentrate, and may significantly interfere with her ability to perform to her potential, id., and suggested that counseling be initiated, id. at 127. *But see* Transcript, at 132, Report of Dr. Howard Griels, M.D., (noting that no psychiatric treatment was necessary). Drs. Viets and Colten concluded that "[t]he vocational rehabilitation prognosis for this client would appear guarded at the present time." *Id.* at 127.

Although drawing a generally brighter picture concerning Mrs. Kelley, Dr. Theoharis K. Seghorn, another doctor who had examined the claimant, also noted Mrs. Kelley's anxiety, particularly when she has to work on her own. Transcript, at 139, 142, 143. He observed, for instance, that Mrs. Kelley is fearful, insecure, and lonely, and feels an "underlying turmoil and sense of being vulnerable in what she sees as a relatively dangerous world ... She is much more anxious, and unable to cope when she has to function on her own. The testing suggests that she is readily overwhelmed by such feelings and immobilized by her own sense of vulnerability." *Id.* at 142. Seghorn added that Mrs. Kelley's sense of vulnerability was heightened with the deaths of her husband and mother, who were both part of her support network, adding that Mrs. Kelley "can function quite well in the small world in which she operates ... Much beyond this raises her anxiety level." *Id.* at 143. These observations are borne out by the Disability Determination and Transmittal performed in 1985 which diagnosed Mrs. Kelley as suffering from "adjustment disorder and anxious mood," *id.* at 82, as well as the Psychiatric

---

2. Many of these observations are disputed by Dr. Howard Greils' submission. For instance, in his interview of Mrs. Kelley, he found her only mildly anxious with no emotional over-ac-

tivity. Transcript at 131. However, the weight of the testimony suggests that Mrs. Kelley suffers from significant psychological impairments.

Review Technique performed in April of 1986, which reached the same conclusion, but noted that the condition "was in substantial remission." *Id.* at 90.

It appears that the ALJ ignored substantial evidence in the record evidencing the claimant's psychological condition. The record demonstrates that Mrs. Kelley suffers from strong feelings of inadequacy and inability. She feels anxious when required to work alone, is readily overwhelmed when faced with tasks she feels are difficult, and can be immobilized by feelings of inadequacy. In short, the evidence demonstrates that Mrs. Kelley is an individual who is faced with a difficult intellectual failing—her illiteracy—that is compounded by significant psychological impairments that have prevented her from rising above her intellectual limitations as well as compounded by her negative feelings about herself. Moreover, the evidence suggests that these feelings negatively impact Mrs. Kelley's working potential. She is not only intimidated by any task she perceives as requiring any measure of intellectual capacity, she is also intimidated by any tasks that require her to perform unfamiliar, non-routinized functions. For instance, she has difficulty in taking public transportation; she is easily confused when changes are made in the operation of buses (such as when a particular bus is waiting in a different location from the norm), and has difficulty comprehending the rapid transit system. Transcript at 129 (where Mrs. Kelley indicates that she dislikes the rapid transit lines because "I'm never sure of where I'm going and all those stops are confusing"). She also has trouble shopping, and will even be unable to complete tasks like doing laundry if changes are made in how it is done (i.e., if a new, unfamiliar detergent has to be used). It thus seems clear that Mrs. Kelley's intellectual and psychological impairments not only limit her cognitive abilities, they also limit the tasks she can perform in the job market. It appears, then, that Mrs. Kelley suffers from the type of intellectual and emotional impairments apparently visualized by § 12.05(C); her intellectual problems limit her working potential, and her

psychological weaknesses deny her the ability to reach even that level of performance.

I thus find that the ALJ ignored this substantial evidence concerning Mrs. Kelley's anxious and depressed mental condition. I further find that these feelings of inadequacy and vulnerability work to make Mrs. Kelley's illiteracy and mental shortcomings even more of an obstacle to her being able to perform substantial gainful activity and meet the requirements of § 12.05(C).

The plaintiff's motion for summary judgment is ALLOWED and the decision of the Secretary is, accordingly, reversed.

SO ORDERED.