**Kathleen J. COCHRAN, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 96–CV–0022A.**

United States District Court, W.D. New York.

Aug. 22, 1997.

Kenneth R. Hiller, Buffalo, NY, for Plaintiff.

Mary Ellen Kresse, Buffalo, NY, for Defendant.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Hugh B. Scott, pursuant to 28 U.S.C. § 636(b)(1)(B), on May 6, 1996. On March 31, 1997, Magistrate Judge Scott filed a Report and Recommendation recommending that defendant's motion for judgment on the pleadings be granted, affirming the final determination of the Commissioner.[1]

The Court having carefully reviewed the Report and Recommendation, the record in this case, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Scott's Report and Recommendation, plaintiff's motion for judgment on the pleadings is denied, defendant's motion for judgment on the pleadings is granted and the case is dismissed in its entirety.

IT IS SO ORDERED.

---

1. Because the Magistrate Judge recommended that the Court grant defendant's motion for judgment on the pleadings, the Court assumes he also intended to recommend that the Court deny plaintiff's motion for judgment on the pleadings.

## Report and Recommendation

SCOTT, United States Magistrate Judge.

### Introduction

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and Supplemental Security Income benefits.

Upon a review of the record, this Court finds that the Commissioner's decision is supported by substantial evidence and accordingly recommends that the determination be affirmed.

### Procedural Background

Plaintiff filed an application for disability insurance benefits on November 17, 1992. (R. 74–77).[1] Plaintiff's applications were denied initially and on reconsideration. (R. 78–80, 84; 83, 85–87). On September 8, 1994, plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case *de novo* and concluded, in a written decision dated January 21, 1995, that she was not disabled within the meaning of the Social Security Act. (R. 10–17) The ALJ's decision became the final decision of the Commissioner on November 24, 1995, when the Appeals Council denied plaintiff's request for review. (R. 4–5)

Plaintiff commenced the instant action on January 11, 1996. The Commissioner now moves, and plaintiff cross-moves, for judgment on the pleadings, pursuant to Fed. R.Civ.P. 12(f).

### Factual Background

The plaintiff is a 57 year old high school graduate whose past relevant work was as a real estate agent, a personal care aid, and a telephone solicitor. (R. 37, 39, and 114–15). Plaintiff alleges that she stopped working in October of 1984 due to an injury she received while employed as a personal care aid. It is undisputed that her last date for disability insurance purposes is December 31, 1987.

---

1. References noted as "(R.___)" are to the certified record of the administrative proceedings.

Thus, to qualify for social security disability benefits, the plaintiff must prove that she was disabled prior to December 31, 1987.

## Discussion

The only issue to be determined by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)).

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

▮ Plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the [plaintiff] could perform." Id.; See also *Dumas v.*

*Schweiker*, 712 F.2d 1545, 1551 (2d Cir.1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980).

▮ In order to determine whether plaintiff is suffering from a disability, tile ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992). However, it should be noted that in the ALJ has an affirmative duty to fully develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir.1972).

▮ In order to determine whether an admitted impairment prevents a claimant from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e).

▮ In the instant case, the ALJ found that although the plaintiff suffered from a "severe impairment" that may have disabled her for a short period of time following the October 1984 incident, the plaintiff was not permanently disabled prior to December 31, 1987. (R. 13).

The ALJ's determination is supported by substantial evidence. As noted above, the record reflects that the plaintiff was injured on October 16, 1984 while working as a personal care aide.[2] The plaintiff claims that she has been permanently disabled since that

---

2. The record reflects that the plaintiff suffered similar injuries in 1981 (R. 197) and 1983 (R. 262).

date as a result of pain in her neck, shoulders and cervical spine.

In a May 17, 1985 report, the plaintiff's treating physician, Dr. John C. Newman, concluded that as a result of the October 1984 incident the plaintiff "sustained a stretch of the brachial plexus" which was "gradually improving" and that she still has "mild residuals of this condition." (R. 242). In a May 12, 1987 worker's compensation report, Dr. Newman stated that he was treating the plaintiff for muscle pain in the left scapula with radiation. In that report Dr. Newman stated that it was "unknown" if the plaintiff's condition would result in any permanent restriction or loss of function. (R. 212) Dr. Newman did not complete the section of the report which asked if the plaintiff was disabled. Id. On a prescription note pad dated may 20, 1993, Dr. Newman states that the plaintiff was released to return to work on November 18, 1988 but that she was "totally disabled for this injury from 1984 thru November 18, 1988." (R. 274).

Several progress reports filed by Dr. James A. Wawrzyniak in connection with the plaintiff's worker's compensation claim assess that the plaintiff was disabled but that the injury would not result in a "permanent restriction." (R. 208, 226, 227, 228, 229, 234, 249, 253, 254, 257, 259, 260) On several of the reports filed by Dr. Wawrzyniak it is noted that the plaintiff "failed to return for treatment." (R. 221, 222, 226).

Dr. Robert A. Caputi, a physician engaged by the plaintiff's employer, also examined the plaintiff during the relevant time period. In a report dated January 18, 1985, Dr. Caputi found that the motion of the plaintiff's head and neck was good except for some limitation of rotation toward the left; that no muscle spasms were detected; and that the intersegmental motions of the spine were normal in range. He noted that reflexes in upper and lower extremities were normal, with a "slight, and questionable diminution of sensation to pinprick on the ulnar border of the hand of the left palm only." (sic) (R. 264) Dr. Caputi concluded that the plaintiff had fully recovered from the October 1984 injury and could return to work without restriction. (R. 264) Dr. Caputi reiterated these conclusions in July 2, 1985 and December 23, 1985 reports. (R. 235, 216).

An x-ray report dated January 15, 1985 found "minor degenerative spondylosis C6–7 anteriorly as well mild changes in the high mid-thoracic spine areas." (R. 265)

In a report dated July 18, 1985, based upon nerve conduction studies the plaintiff was diagnosed with thoracic outlet syndrome by Dr. James J. Czyrny. (R. 231–32). In a February 5, 1986 report, Dr. Czyrny notes that nerve conduction studies in January of 1986 showed improvement and that the ulnar F wave and axillary F loop latency values were now within normal limits. (R. 214) Dr. Czyrny does not provide any mention of the plaintiff's residual functional capacity or her ability to perform work at any level.

The plaintiff was also examined by Dr. Edmund Langford. In a report dated March 15, 1985, Dr. Langford found that the plaintiff could toe-to-heel walk normally, had full back and shoulder motions, could perform straight leg raising to 90 degrees bilaterally, had no atrophy and normal reflexes. He concluded that there were no objective findings to support the plaintiff's subjective shoulder pain and concluded that the plaintiff had a mild partial disability. (R. 258).

The record reflects that the plaintiff's impairment was exacerbated by a similar work related incident in August of 1990 (R. 121) and an automobile accident on December 7, 1991 (R. 124).

■ Almost all of the remaining medical reports in the record are dated subsequent to December 31, 1987. Except as they might refer to the plaintiff's status prior to 1988, in light of the post–1987 incidents which may have exacerbated the plaintiff's impairment, these reports are not relevant to whether the plaintiff was disabled prior to December 31, 1987.

The ALJ also reviewed the plaintiff's testimony regarding her own assessment of her residual functional capacity and her ability to perform household chores. Based upon his review of the record, the ALJ concluded that at all times prior to December 31, 1987, the plaintiff could have returned to her prior

work as a telemarketer. (R. 16) Based upon Dr. Newman's contemporaneous statement that the plaintiff suffered only "mild residuals from [thoracic outlet syndrome]," (R. 242); Dr. Langford's opinion that the plaintiff suffered only a mild partial disability (R. 258); Dr. Caputi's opinion that the plaintiff was not disabled (R. 216, 235, 264); and Dr. Czyrny's January 1986 report reflecting that nerve conduction study results were normal (R. 214), the Court concludes that there is substantial evidence in the record to support the ALJ's determination that although the plaintiff could not return to her prior work as a personal care aide prior to December 31, 1987, the plaintiff had the residual functional capacity to return to her prior work as a telemarketer.

### Conclusion

For the foregoing reasons, this Court recommends that the final decision of the Commissioner be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation _must_ be filed with the Clerk of this Court _within ten (10) days_ after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b) and WDNY Local Rule 72(a)(3).**

_Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein._ Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); _F.D.I.C. v. Hillcrest Associates,_ 66 F.3d 566 (2d Cir.1995); _Wesolek v. Canadair Ltd.,_ 838 F.2d 55 (2d Cir.1988).

█ The District Court on _de novo_ review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See _Paterson–Leitch Co. Inc. v. Massachu-_

_setts Municipal Wholesale Electric Co.,_ 840 F.2d 985 (1st Cir.1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." _**Failure to comply with the provisions of Rule 72(a)(3) may result in the District Court's refusal to consider the objection.**_

So ordered.

Dated: March 31, 1997.